757 So.2d 961 (2000)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Shirley C. BYERS.
No. 1998-JP-01835-SCT.
Supreme Court of Mississippi.
February 17, 2000.
Rehearing Denied May 4, 2000.
*963 Luther T. Brantley, III, Jackson, Attorney for Appellant.
Reuben V. Anderson, James W. Craig, Jackson, Attorneys for Appellee.
EN BANC.
COBB, Justice, for the Court:
¶ 1. The Mississippi Commission on Judicial Performance filed a formal complaint charging Judge Shirley C. Byers, Circuit Court Judge for the Fourth Circuit District, with judicial misconduct. After investigation a three-member committee appointed by the Commission conducted a trial and submitted its Committee Findings of Fact and Recommendations to the Commission. Judge Byers filed objections to the Committee's Findings, and on December 11, 1998, the Commission unanimously adopted the Committee Findings, as amended, and unanimously recommended to this Court that Judge Byers be removed from office and pay all costs associated with this matter, totaling $2,023.59.
¶ 2. Having conducted a de novo review of the entire record, this Court accepts and adopts a substantial portion of the Commission's findings, but not its recommended sanction of removal. Acknowledging that the voters of her district have already removed Judge Byers from office, we find that Judge Byers should be publicly reprimanded, fined $1,500, and taxed with all costs of these proceedings.

STATEMENT OF THE FACTS
¶ 3. Shirley C. Byers was elected Circuit Judge of the Fourth Circuit Court District in November 1994 and began her duties in January 1995. During her first year in office, two letters of complaint were filed with the Commission, both arising out of the same incident. This complaint was dismissed by the Commission due to insufficient evidence. Other complaints surfaced that warranted investigation, and eventually two formal complaints were filed against Judge Byers. In the first formal complaint, Judge Byers was given a private admonishment.
¶ 4. The second formal complaint, the subject of this proceeding, charges Judge Byers with six counts of judicial misconduct, as follows:
(1) Count Iimproperly sentencing a defendant under the wrong statute;
(2) Count 2improperly extending a defendant's probation and improperly placing him on supervised probation;
(3) Count 3interfering with orders set by the senior judge;
(4) Count 4entering orders previously entered by another judge;
(5) Count 5abusing contempt powers; and
(6) Count 6engaging in the above actions, which constitutes judicial misconduct
¶ 5. Judge Byers claims that the formal complaint was based on prosecutorial misconduct and race-based discrimination in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and § 177A of the Mississippi Constitution of 1890, as amended.
¶ 6. After completion of the Commission's investigation, a committee, composed of presiding Judge Clarence E. Morgan, III, Amy D. Whitten and Erik M. Lowrey conducted a trial. After hearing witnesses, considering the evidence and arguments of counsel, and reviewing all evidence and testimony, the committee filed its Findings of Fact and Recommendations, dismissing Count 4 and finding judicial misconduct with regard to all other counts. Taking judicial notice of Judge *964 Byers's defeat in the November 1998 election, the committee recommended that she be suspended from office for six months without pay, if and when she is elected or appointed to any judicial office in Mississippi. Judge Byers submitted objections to the committee's findings pursuant to Rule 8(E) of the Rules of the Mississippi Commission on Judicial Performance.
¶ 7. Subsequently the seven members of the Commission unanimously adopted the committee's findings and recommendations, as amended, finding by clear and convincing evidence that Judge Byers's conduct violated Canons 1, 2 A, 2 B and 3 A(1), 3 B(1) of the Code of Judicial Conduct of Mississippi Judges and Miss.Code Ann. §§ 99-15-26, 47-7-37, 47-7-47, and 9-7-3. Further, the Commission found that her conduct constituted willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, in violation of Section 177A of the Mississippi Constitution of 1890, as amended.
¶ 8. The Commission voted unanimously to recommend to this Court that Judge Byers be removed from office and assessed costs. The Commission filed its Findings of Fact and Recommendations with this Court on January 5, 1999. Judge Byers raises the following issues before this Court:
ISSUES
I. SHOULD THE COMMISSION'S FORMAL COMPLAINT HAVE BEEN DISMISSED DUE TO: A. PROSECUTORIAL MISCONDUCT BY THE COMMISSION'S STAFF AND/OR B. EQUAL PROTECTION VIOLATIONS
II. DID THE CONDUCT OF JUDGE SHIRLEY C. BYERS CONSTITUTE WILLFUL MISCONDUCT IN OFFICE AND CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE WHICH BRINGS THE JUDICIAL OFFICE INTO DISREPUTE, PURSUANT TO SECTION 177A OF THE MISSISSIPPI CONSTITUTION OF 1890, AS AMENDED
III. SHOULD JUDGE SHIRLEY C. BYERS BE REMOVED FROM OFFICE AND ASSESSED THE COSTS OF THIS PROCEEDING BY THE MISSISSIPPI SUPREME COURT, PURSUANT TO SECTION 177A OF THE MISSISSIPPI CONSTITUTION OF 1890, AS AMENDED

STANDARD OF REVIEW
¶ 9. The appropriate standard of review used in a judicial disciplinary proceeding is derived from Rule 10(E) of the Rules of the Mississippi Commission on Judicial Performance, which states:
Based upon a review of the entire record, the Supreme Court shall prepare and publish a written opinion and judgment directing such disciplinary action, if any, as it finds just and proper. The Supreme Court may accept, reject, or modify, in whole or in part, the findings and recommendation of the Commission. In the event that more than one (1) recommendation for discipline of the judge is filed, the Supreme Court may render a single decision or impose a single sanction with respect to all recommendations.
Mississippi Comm'n on Judicial Performance v. Sanders, 708 So.2d 866, 871 (Miss.1998). This Court conducts a de novo review of judicial misconduct proceedings, giving great deference to the recommendations of the Commission. Its findings must be based on clear and convincing evidence. This Court is not bound by the recommendations and must render an independent judgment. Mississippi Comm'n on Judicial Performance v. Spencer, 725 So.2d 171, 174 (Miss.1998).

ANALYSIS

I. SHOULD THE COMMISSION'S FORMAL COMPLAINT HAVE *965 BEEN DISMISSED DUE TO: A. PROSECUTORIAL MISCONDUCT BY THE COMMISSION'S STAFF AND/OR B. DUE TO EQUAL PROTECTION VIOLATIONS

(A) The Allegation of Prosecutorial Misconduct
¶ 10. Judge Byers charged that the initial investigation against her was conducted by a staff member whose participation in the investigation amounted to prosecutorial misconduct because that staff member's application for a job as a judicial law clerk in the Fourth Circuit Court District had been denied, in part, on the recommendation of Judge Byers.
¶ 11. A review of the complaint process reveals that the Commission has jurisdiction over every judge of any court in existence in the State of Mississippi. The Commission's duties, function and purpose are set forth by constitutional provision, general statutory law and Rules of the Commission. The purpose of the Commission is rehabilitative, educational and disciplinary, and the proceedings are civil in nature. The Commission may begin an inquiry on its own motion based upon information received anonymously, from the media or through any other source. After receiving a complaint, a file is opened, the complaint is assigned a number, and a preliminary evaluation of each complaint is conducted. A complaint may be dismissed summarily at that point, and a significant number are, primarily because they are directed at decisions made by a judge which fall within judicial discretion. Those complaints which warrant further attention are investigated by Commission staff. The judge in question is notified and given an opportunity to respond. The Commission may dismiss the complaint, privately admonish the judge, enter into a memorandum of understanding with the judge, or file a formal complaint against the judge. If a formal complaint is filed, the judge is given an opportunity to file responsive pleadings and a formal hearing is held before the Commission or before a three-member Committee of judges/lawyers appointed by the Commission. The findings of fact and recommendations, and the record of the hearing are then filed with this Court. This Court may suspend, fine, publicly censure or reprimand, or remove a judge whose actions constitute misconduct. Procedural safeguards provide a judge with an opportunity to be presented with the charges, to be represented by counsel, and to respond and be heard.[1]
¶ 12. In judicial misconduct proceedings, this Court will review the entire record, and it is the trier of fact. Mississippi Comm'n on Judicial Performance v. Fletcher, 686 So.2d 1075, 1078 (Miss.1996). Based on the record before us in the present case, we find that the established procedures were properly followed, and there was no prosecutorial misconduct. The first complaints against Judge Byers were received before the staff member in question ever began working for the Commission. The Commission later assigned the complaint to the new staff member who then proceeded to investigate under the direction of the Commission. The staff member personally spoke with Judge Byers about the complaint, before speaking with anyone else. After Judge Byers expressed concern to a Commission member about this particular staff member being the investigator, the Commission promptly removed the staff member from this investigation.
¶ 13. The Commission has multiple roles as investigator and prosecutor and "[t]he processes of the Commission do not in and of themselves appear to present an unacceptable risk of bias." Mississippi Comm'n on Judicial Performance v. Spencer, 725 So.2d 171, 174-75 (Miss.1998) *966 (citing Mississippi Comm'n on Judicial Performance v. Russell, 691 So.2d 929, 946 (Miss.1997)). Although bias was alleged by Judge Byers, there was no showing of any specific acts that constitute bias, and the facts indicate that whatever bias might have been present was promptly corrected by the Commission. Thus Judge Byers "has not demonstrated that bias in fact permeates the process," as required by Mississippi Comm'n on Judicial Performance v. Russell, 691 So.2d 929, 946 (Miss. 1997). "To constitute a due process violation, the prosecutorial misconduct must be `of sufficient significance to result in the denial of the defendant's right to a fair trial'." Gray v. State, 728 So.2d 36, 54 (Miss.1998) (citing Greer v. Miller, 483 U.S. 756, 765, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987)).

(B) The Allegation of Equal Protection Violations
¶ 14. Judge Byers alleges that the Commission has recommended discipline against African-American judges in 24% of the total reported cases while they hold less than 12% of the judgeship positions and that this is proof of its racial discrimination. In support of this allegation, Judge Byers cited, and this Court has taken judicial notice of, various documents relating to race and judgeships in Mississippi and elsewhere. In response, the Commission argues that the documents presented to this Court for judicial notice are, "by no means complete or necessarily accurate .... they have no probative value whatsoever and in no way suggest any violation of equal protection ..." It should be noted that the order of this Court which granted judicial notice of the various documents does not state nor infer that the fifteen documents, consisting of more than 340 pages, had been reviewed or accepted as authoritative by this Court.
¶ 15. Judge Byers's counsel admits that she does not have a factual basis for the racial discrimination allegation, but argues that this is caused by the inherent difficulties in obtaining such facts due to the confidential nature of the Commission's records. The Commission points out that prior to trial, Judge Byers made no attempt, through discovery or otherwise, to support her claims of discrimination and only raised the issue at the close of her case at the formal hearing, in response to a Commission member's question regarding her motion to dismiss. The Commission asserts that Judge Byers' motion to dismiss is "essentially based upon a claim of selective prosecution ...".
¶ 16. Judicial performance proceedings are civil in nature but both Judge Byers and the Commission cite a criminal case, United States v. Armstrong, 517 U.S. 456, 463-65, 116 S.Ct. 1480, 1486, 134 L.Ed.2d 687 (1996), as their primary authority on this issue. In Armstrong, the U.S. Supreme Court stated that the standard for selective prosecution claims is a demanding one and that the standard for a criminal defendant to prove the claim demands "clear evidence" to displace the presumption that a prosecutor has acted lawfully. The standard set forth in Armstrong would require a showing that "similarly situated individuals of a different race were not prosecuted." Id. at 1486-87. Judge Byers's recitation of various statistics from various publications, and her interpretation of the numbers in her references to Mississippi cases fall far short of the Armstrong standard.
¶ 17. Proceedings before the Commission begin either by submission of a written complaint or upon the Commission's own motion based on information received. Thus, the process of "prosecution" or investigation of a judge begins when information is received by the Commission. Each complaint is evaluated. Unless the complaint is dismissed at this point, the Commission's procedures require notice to the judge in question, who is given full opportunity to respond and be heard.
¶ 18. If the judge appeals the Commission's decision, this Court renders an independent judgment following a de novo *967 review based on clear and convincing evidence. Spencer, at 174. The record in this case presents minimal proof in support of Judge Byers's claim that her equal protection rights were violated. There has been no proof presented that warrants a finding of abuse of prosecutorial discretion based on race or gender.
¶ 19. There is no indication in this case that the procedural safeguards established by the legislature were abused or that the judge's rights were violated. Judge Byers admitted that she had, in fact, done the acts which resulted in the formal complaints, including applying an incorrect statute to sentence a defendant; improperly modifying or extending a defendant's probation contrary to law and having a reporter arrested for direct contempt and jailed without bond, thereby not applying proper procedures. In each of these incidents, the fact that these actions occurred is not disputed by Judge Byers. No proof was presented to show that judges of other races who were accused of these kinds of violations were not disciplined. The record simply does not support this claim by Judge Byers; and therefore, the Commission was not in error in denying the motion to dismiss.

II. DID THE CONDUCT OF JUDGE SHIRLEY C. BYERS CONSTITUTE WILLFUL MISCONDUCT IN OFFICE AND CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE WHICH BRINGS THE JUDICIAL OFFICE INTO DISREPUTE, PURSUANT TO SECTION 177A OF THE MISSISSIPPI CONSTITUTION OF 1890, AS AMENDED
¶ 20. The Commission found by clear and convincing evidence that Judge Byers's conduct was actionable under Section 177A of the Mississippi Constitution of 1890, as amended, because it constituted "willful misconduct in office ..." (subsection b) and "conduct prejudicial to the administration of justice which brings the judicial office into disrepute ..." (subsection e).
¶ 21. Willful misconduct has been defined as the improper or wrongful use of power that involves more than an error of judgment or a mere lack of diligence. This may occur through negligence or ignorance not amounting to bad faith. Russell, 691 So.2d at 936-37 (quoting Mississippi Comm'n on Judicial Performance v. Milling, 651 So.2d 531, 538 (Miss.1995)); see also Mississippi Comm'n on Judicial Performance v. Fletcher, 686 So.2d 1075, 1077 (Miss.1996).
¶ 22. The specific actions of Judge Byers found to be actionable are as follows:

Count IImproper Sentencing
¶ 23. The first allegation of misconduct against Judge Byers arose from her erroneous sentencing of a defendant, and after being made aware of the error, her failure to correct the mistake, thereby violating Miss.Code Ann. § 99-15-26(1) (Supp.1999) and Canons 1, 2 A, 2 B and 3 A(1) of the Code of Judicial Conduct of Mississippi Judges. When sentencing the defendant, Curtis, who pled guilty following his indictment for aggravated assault, Judge Byers applied Section 99-15-26, a pretrial diversion statute which provides in pertinent part:
(1) In all criminal cases, felony and misdemeanor, other than crimes against the person, the circuit or county court shall be empowered, upon the entry of a plea of guilty by a criminal defendant, to withhold acceptance of the plea and sentence thereon pending successful completion of such conditions as may be imposed by the court ...
Miss.Code Ann. § 99-15-26(1) (Supp.1999) (emphasis added).
¶ 24. Because Curtis's crime was a crime against a person, he was not eligible to be sentenced under this section. Judge Byers testified that at the time she entered the sentencing order in January 1997, she did not realize that this section did not apply to a charge of assault. In *968 her answer to the formal complaint, she stated under oath that she "denies that Curtis was sentenced for aggravated assault...", but the record contains a copy of her sentencing order which proves that he was.
¶ 25. The Commission found that the actions taken by Judge Byers with regard to this sentencing matter violated not only the requirements of Section 99-15-26 but also Canons 1, 2 A, 2 B, and 3 A(1) of the Code of Judicial Conduct which state:
Canon 1A Judge Should Uphold the Integrity and Independence of the Judiciary
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.
Canon 2A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities
A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness.
Canon 3A Judge Should Perform the Duties of His Office Impartially and Diligently
The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:
A. Adjudicative Responsibilities.
(1) A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism.
* * * * * * *
B. Administrative Responsibilities.
(1) A judge should diligently discharge his administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials.
Miss.Code of Judicial Conduct Canons 1-3.
¶ 26. There was no proof that Judge Byers willfully intended to misuse the sentencing statute. However, we find that the fact that she did misuse it and subsequently did nothing to correct her error, plus her false statement under oath regarding the sentencing, constitutes violation of the sentencing statute, the constitution, and the code of judicial conduct.

Count IIImproperly Extending Probation
¶ 27. The second allegation of misconduct arose from Judge Byers's improper extension of a defendant's probation in violation of Miss.Code Ann. §§ 47-7-37 & 47 (Supp.1999) and Canons 1, 2 A, 2 B and 3 A(1) of the Code of Judicial Conduct In 1992, (prior to Judge Byers's election), the defendant (Williams) was indicted, pled guilty to robbery and was sentenced to ten years in prison. At a probation revocation hearing (arising from the 1992 sentence), Judge Byers found that Williams had failed to report to the probation office for almost four and one half years, so she ordered him to complete the Leflore County Restitution Center program, and upon completion of this program, to continue on intensive supervised probation for four more years.
*969 ¶ 28. This order was improper under Sections 47-7-47 and 47-7-37. Section 47-7-47 provides in part:
(1) The judge of any circuit court may place an offender on a program of earned
probation after a period of confinement as set out herein ...
(2)(a) Any circuit court ... may, upon its own motion, acting upon the advice and consent of the commissioner at the time of the initial sentencing only, not earlier than thirty (30) days nor later than one (1) year after the defendant has been delivered to the custody of the department, to which he has been sentenced, suspend the further execution of the sentence and place the defendant on earned probation, except ... if the defendant has been confined for the conviction of a felony on a previous occasion in any court or courts of the United States ...
(b) The authority granted in this subsection shall be exercised by the judge who imposed sentence on the defendant, or his successor.
Miss.Code Ann. § 47-7-47 (Supp.1999) (emphasis added).
¶ 29. The Commission argued that this section could not be used in the Williams case because it specifically states that it is only applicable at the initial time of sentencing and it is not to be used when a defendant has been confined for the conviction of a felony on a prior occasion.
¶ 30. By extending the defendant's probation four more years Judge Byers was again in violation of the code. Section 47-7-37 provides:
The period of probation shall be fixed by the court, and may at any time be extended or terminated by the court, or judge in vacation. Such period with any extension thereof shall not exceed five (5) years ...
Miss.Code Ann. § 47-7-37 (Supp.1999) (emphasis added).
¶ 31. Judge Byers admitted that she had improperly applied the statutes without authority. The Commission concluded that her actions violated §§ 47-7-37 and 47-7-47 and that this was sufficient conduct to constitute willful misconduct as to Canons 1, 2 A, 2 B and 3 A(1) of the Code of Judicial Conduct of Mississippi Judges. While Judge Byers clearly committed errors in judgment, which violated the statutes and the canons, we do not find her actions with regard to this Court to constitute willful misconduct.

Count IIIInterfering With Another Judge's Orders
¶ 32. The third allegation of misconduct arose from Judge Byers's entering orders regarding the same defendant (Williams) at the same time the senior judge was also entering orders regarding Williams in some of the same cases. The Commission found that Judge Byers violated Miss.Code Ann. §§ 9-7-3(5) (Supp.1999) and 47-7-47 (Supp.1999) and Canons 1, 2 A, 2 B, 3 A(1) and 3 B(1) of the Code of Judicial Conduct of Mississippi Judges.
¶ 33. There were numerous files on the same defendant, arising out of multiple crimes. The confusion apparently arose partly from miscommunication by the person(s) handling the files as they were given to the judges at the various hearings and partly because of Judge Byers's practice of not issuing written orders regarding release on bond. However, there was no proof that Judge Byers intentionally interfered with the Williams cases assigned to the senior judge.
¶ 34. While it is clear that a serious lack of communication and cooperation existed between Judge Byers and the senior judge, we do not find this to be entirely the fault of Judge Byers. We find that her conduct in regard to the allegations of Count III, while not evidencing the level of civility and professionalism we would expect of our judges, does not rise to the level of violation of the statutes and canons as charged by the Commission. Accordingly, *970 we find that Count III should be dismissed.

Count IVEntering Orders Previously Entered by Another Judge
¶ 35. Count IV was dismissed by the Commission upon finding that issuing duplicate orders of dismissal by Judge Byers and the senior judge, in the same case, was merely a clerical mistake. We agree that Count IV should be dismissed.

Count VAbusing Contempt Powers
¶ 36. The fifth allegation of misconduct arose when Judge Byers abused her contempt powers in arresting Cynthia Jeffries on a direct contempt charge, when in fact Jeffries's actions were, at most, the basis of constructive (indirect) contempt. We agree with the Commission's findings that this charge is the most troubling and serious of all the charges set out in the formal complaint.
¶ 37. Judge Byers clearly did not use the correct procedural safeguards required for a charge of constructive contempt, which are: "... a specific charge, notice and a hearing." Purvis v. Purvis, 657 So.2d 794, 798 (Miss.1994) (citing Wood v. State, 227 So.2d 288, 290 (Miss. 1969)). The Commission found that this action violated Canons 1, 2 A, 2 B, 3 A(1) and 3 B(1) of the Code of Judicial Conduct. This Court agrees with the Commission's Findings on Count Five.
¶ 38. Jeffries, a newspaper reporter for the Delta Democrat Times, disobeyed an order given to her by Judge Byers when she published an article regarding a juvenile proceeding. Judge Byers had Jeffries arrested and sentenced her to serve 72 hours in jail without bond. Jeffries's lawyer contacted another judge who advised him of Jeffries's statutory right to a bond and set a bond releasing Jeffries from jail.
¶ 39. At the time the Jeffries matter occurred, the first formal complaint against Judge Byers, which also involved an abuse of judicial (although not contempt) powers, was pending. In that matter, referred to at the hearing as Commission Inquiry 96-247, a Ms. Broadway was arrested in the hallway of the courthouse, searched, jailed, and bond was set for $2,500 by Judge Byers on charges of creating a disturbance and intimidating a judge. Formal charges were never filed, and Broadway was finally released after she posted bond. For her actions in the Broadway matter, Judge Byers was given a private reprimand. She admitted that her involvement in setting bond was improper because she was the complaining witness. At the present time of the complaint, Judge Byers was already on notice of the seriousness of abuse of her powers as judge, yet she again abused this power in the Jeffries matter. Judge Byers argues that Jeffries was obliged to follow her orders not to publish the juvenile records and that Court orders have to "... be obeyed until they are reversed or set aside in an orderly fashion." (citing United States v. Dickinson, 465 F.2d 496 (5th Cir.1972)). Although Judge Byers recites the law in Dickinson, there are several reasons why this case cannot be used to justify her actions in the Jeffries matter.
¶ 40. First, in Dickinson, two reporters violated a court order not to publish details of the evidence taken in a court hearing. Dickinson at 500. These reporters were held to be in contempt, and the opinion reflects that "a show cause order was issued and following a hearing thereon, the district court found the appellants guilty of criminal contempt for knowingly having violated the November 1 order. Each defendant was sentenced to pay a fine of $300.00." Id.
¶ 41. In the case sub judice, when Judge Byers found out that Jeffries had disobeyed her court order, she had an arrest warrant issued and Jeffries was brought before her with no filing of an affidavit nor an order to show cause. Judge Byers stated that the purpose of the "hearing" in chambers was for Jeffries to show cause. Jeffries was not given any prior notice that a hearing was to be held at a certain time or place. She was not allowed to present *971 witnesses or to put on any evidence. She was found to be in "direct" contempt and was sentenced to 72 hours in jail. Jeffries's lawyer was present during the proceeding and asked if the charge was for direct contempt for writing the article. When he asked if he could make a further record, Judge Byers told him he could not.
¶ 42. Jeffries's lawyer then asked if Judge Byers would consider an appeal bond, which she refused. Judge Byers later stated that she was under the impression that bond on this matter was discretionary with the judge. However, Miss.Code Ann. § 11-51-11 (Supp.1999) provides that an appeal from a judgment for criminal contempt "shall be allowed upon the posting of a bond". Judge Byers stated that she had her law clerk research contempt charges, yet she admitted that she was not aware at the time of § 11-51-11.
¶ 43. Jeffries was also denied her procedural rights in contradiction to the requirements of a charge for constructive contempt as defined by this Court in Purvis. Purvis at 798. In Dickinson, although the reporters were in contempt and were only given a fine, a show cause was issued and a hearing was held thereby providing the parties with due process. Dickinson at 500; Purvis at 798. The often confused labels that a trial judge uses in contempt charges do not control; the clarity or ambiguity of the contempt order as well as the procedures followed to enter the contempt sanctions are what govern. Here, the violation of the order occurred outside the presence of the court and thus was a constructive contempt charge. The order was entered as an unalterable punishment for having violated a court directive, thereby constituting criminal contempt. Hinds County Bd. of Supervisors v. Common Cause, 551 So.2d 107, 120-21 (Miss.1989). Criminal contempt is a separate action in which a bond must be posted before an appeal is authorized. Miss.Code Ann. § 11-51-11 (Supp. 1999). Judge Byers denied Jeffries the right to bond in violation of the statute.
¶ 44. Judge Byers's reliance on Dickinson is further misplaced since the United States Supreme Court has held that a prior restraint on speech is presumptively invalid and the court issuing the order must balance factors required in order to overcome this presumption. Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 562, 570, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). Whether Judge Byers knew about the holding in Nebraska Press is immaterial. The issue is the failure to follow statutory requirements and case law when depriving a citizen of liberty. Miss. Const. art. 3, § 14; Miss.Code Ann, § 11-51-11 (Supp. 1999); Purvis, at 798.
¶ 45. Procedural irregularities occurring in the arrest of a citizen can amount to judicial misconduct, and a judge should be, "admonished in the strongest possible terms to learn the law and administer his office in strict conformance therewith." In re Bailey, 541 So.2d 1036, 1037 (Miss. 1989). "[A] judge's intemperance with defendants, court personnel, and attorneys is conduct which prejudices the administration of justice and casts the judicial office into disrepute", and cannot be tolerated. Mississippi Comm'n on Judicial Performance v. Spencer, 725 So.2d 171, 179 (Miss.1998). Criticism will surely come to those who hold elected positions, but, "[t]hose who accept judicial office must expect and endure such criticism" and be "... long of fuse and thick of skin." Mississippi Judicial Performance Comm'n v. Walker, 565 So.2d 1117, 1123 (Miss.1990) (citing DeGeorge v. Superior Court, 40 Cal. App.3d 305, 312, 114 Cal.Rptr. 860 (Cal.Ct. App.1974)). "Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. He must expect to be the subject of constant public scrutiny. He must therefore accept restrictions on his conduct that might be viewed as burdensome by the ordinary citizen and should do so *972 freely and willingly." (Miss.Code of Judicial Conduct Canon 2 cmt.)
¶ 46. In the case sub judice, Judge Byers abused her powers when she used the incorrect procedures to hold Jeffries in contempt and put Jeffries in jail. This Court in Walker, restated that a judge may behave in a manner that is prejudicial to the administration of justice so as to bring the judicial office into disrepute and the result is the same regardless of whether bad faith or negligence and ignorance are involved. Id. at 1123. Having a citizen arrested and put in jail without following the correct procedural safeguards of giving a specific charge, notice and a hearing violates Canon 1 since disregard of the law through negligence or ignorance brings the integrity and independence of the judiciary into question. These actions erode the public's confidence in Judge Byers's ability to sit as an acting judge, in violation of Canon 2 A. The actions taken by Judge Byers further violate Canons 3 A(1)-being faithful to the law and maintaining professional competence, and 3 B(1)-diligently discharging administrative responsibilities and maintaining professional competence in judicial administration. This Court finds that Judge Byers did violate Canons 1, 2 A, 3 A(1) and 3 B(1) of the Code of Judicial Conduct of Mississippi Judges with regard to Count V.

Count VIViolation of Section 177A
¶ 47. Count VI charges that Judge Byers, by engaging in the aforementioned conduct, violated Section 177A of the Mississippi Constitution of 1890 as amended (1979), and specifically that said conduct constitutes violations of subsections (b) willful misconduct in office and (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute. As stated previously, willful misconduct is the improper or wrongful use of power that involves more than an error of judgment or a mere lack of diligence that may occur through negligence or ignorance not amounting to bad faith. Russell, 691 So.2d at 936-37; Milling, 651 So.2d at 538; see also Mississippi Comm'n on Judicial Performance v. Fletcher, 686 So.2d 1075, 1077 (Miss.1996). The Commission found by clear and convincing evidence that the violations stated in Counts I, II, III and V constituted a violation of Section 177A, Count VI.
¶ 48. This Court finds by clear and convincing evidence, that Judge Byers's conduct, in its totality, constituted willful misconduct in office and conduct prejudicial to the administration of justice.

III. SHOULD JUDGE SHIRLEY C. BYERS BE REMOVED FROM OFFICE AND ASSESSED THE COSTS OF THIS PROCEEDING BY THE MISSISSIPPI SUPREME COURT, PURSUANT TO SECTION 177A OF THE MISSISSIPPI CONSTITUTION OF 1890, AS AMENDED
¶ 49. The Commission recommended that Judge Shirley C. Byers be removed from office and pay all costs associated with the prosecution of the complaint, totaling $2,023.59. Sanctions available to the Court include removal from office, suspension, fine and public censure or reprimand. The sanction imposed should be consistent with other like cases. Mississippi Comm'n on Judicial Performance v. Fletcher, 686 So.2d 1075 (Miss. 1996).
¶ 50. The Commission may consider prior judicial misconduct on the part of a judge when considering the sanctions to be imposed. Mississippi Comm'n on Judicial Performance v. Jenkins, 725 So.2d 162, 170 (Miss.1998). After careful consideration of the findings of fact and recommendations of the Commission on Judicial Performance, as well as a thorough examination of the record, this Court finds, by clear and convincing evidence, that Judge Byers has violated Canons 1, 2 A, 2 B(1), 3 A(1) and 3 B(1) of the Code of Judicial Conduct, Miss.Code Ann. §§ 99-15-26, 47-7-37 and 47-7-47 and Section 177A of the Mississippi Constitution.
*973 ¶ 51. Due to the mitigating factors involved and the seriousness of the sanctions, we have carefully scrutinized the Commission's, recommendation that Judge Byers be removed from office, and have considered whether removal is the only way to reestablish the reputation and integrity of the office.
¶ 52. Judges are called upon to exemplify the highest of standards of conduct in a variety of situations and "have a duty to conduct themselves with respect for those they serve, including the court staff and the litigants that come before them." Mississippi Comm'n on Judicial Performance v. Spencer, 725 So.2d 171, 178 (Miss.1998). This Court is reluctant to remove a judge from office when there has been no criminal activity involved nor apparent willful attempt to bring the office of the judiciary into disrespect. However, the power to hold a person in contempt of court is a solemn responsibility, and any misuse of this power is a serious charge. Further, "[c]laim of ignorance of the duties of his office or negligence in carrying out those duties as a defense to judicial misconduct is tantamount to an admission by an accused judge that he does not possess the qualifications necessary to hold the office to which he has been elected." In re Collins, 524 So.2d 553, 557 (Miss.1987).
¶ 53. This Court is not bound by the Commission's recommendations, but we give them great weight since the Commission was able to observe the witnesses during the hearing and had the benefit of personal observation of the demeanor and attitude of the judge. Bailey at 1037. This Court, in upholding the standards as set out in the judicial canons, recognizes that we require our judges to be: "patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity, and should require similar conduct of lawyers, and of his staff, court officials, and others subject to his direction and control." Miss.Code of Judicial Conduct Canon 3.
¶ 54. Judge Byers either knew or should have known that her actions were in excess of the authority and jurisdiction conferred upon her as a circuit court judge. Because of the repeated nature and the magnitude of the conduct, we agree that Judge Byers engaged in willful misconduct in office and conduct which is prejudicial to the administration of justice which brings the judicial office into disrepute. This Court seriously considered the sanction of removal. However, Judge Byers has already been removed by the people of her electoral district. She offered for re-election and was defeated.

CONCLUSION
¶ 55. An independent and honorable judiciary is indispensable to justice in our society. In order to maintain the integrity of the judiciary this Court finds, and we hereby order that Judge Shirley C. Byers shall be publicly reprimanded and that she be required to pay a fine of $1,500.00 and $2,023.59 in costs.
¶ 56. SHIRLEY C. BYERS, FORMER CIRCUIT COURT JUDGE FOR THE FOURTH CIRCUIT COURT DISTRICT, SHALL BE PUBLICLY REPRIMANDED, FINED $1,500 AND ASSESSED WITH TOTAL COSTS OF $2,023.59 TO BE PAID WITHIN THIRTY (30) DAYS.
PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., MILLS AND WALLER, JJ., CONCUR. BANKS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, J. McRAE, J., JOINS IN PART. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. BANKS, J., JOINS IN PART.
BANKS, Justice, concurring in part and dissenting in part:
¶ 57. I agree with the majority for the most part. I write separately to express my view concerning the Commission's misapprehension *974 of one of our criminal disposition statutes and to note my disagreement with the imposition of a fine in this case.

I.
¶ 58. The majority notes the Commission's position with regard to Judge Byers's handling of the probationer, Williams. The majority disagrees with the Commission as to the import of this transaction and with that I agree. I feel compelled to note further, however, that I disagree with the Commission's premise that there has been a violation of the terms of Miss.Code Ann. § 47-7-47 (Supp. 1999). That section comes into play here, presumably, only in that it is the statute which provides explicitly for restitution as a condition of probation. Here, Williams, who was already on probation was ordered to make restitution through attendance at a restitution center as added condition of continued probation. The Commission seems to suggest that such restitution may be ordered only at the time of original sentencing. To the extent that the majority accepts that reasoning, I disagree.
¶ 59. Briefly, there are two points. First, extension of probation is among the options given a trial judge when faced with one who has violated probation. Second, Miss.Code Ann. § 47-7-47(4) (Supp.1999), providing the restitution condition, is not limited to probation imposed following incarceration under the terms of § 47-7-47(2). Indeed, that subsection explicitly refers to both "probation" and the "earned probation" provided for in § 47-7-47(1) and (2).
¶ 60. Obviously, a probation violation cannot be addressed at the time of original sentencing. We have previously noted that this inartfully drawn statute, accommodating, among other things, "shock probation", cannot be applied literally. Smith v. State, 580 So.2d 1221 (Miss.1991). In practice, the only thing necessary at the time of original sentence is a reference to § 47-7-47. Id. That reference allows the trial court, within the time limits prescribed, to order a defendant's release from the penitentiary and placement on "earned" probation. That probation then operates like any other probation, governed by the provisions of § 47-7-37 allowing probation to be extended and the provision in § 47-7-35 allowing the terms and conditions to be modified.
¶ 61. A sentence to a restitution center is technically, not a sentence to incarceration but rather a sentencing imposing a condition of probation that the defendant remain at a restitution center for a prescribed period. There is nothing in our statutory scheme that prohibits the imposition of additional lawful conditions of probation, including that the probationer, remain in a restitution center for a prescribed period, as an alternative to revocation where there has been a probation violation. Indeed, the trial court is given the explicit power to "alter or modify conditions of probation." Miss.Code Ann. § 47-7-35 (Supp.1999).
¶ 62. Thus unlike the situation in Mississippi Comm'n on Judicial Performance v. Russell, 691 So.2d 929 (Miss.1997), this is not a case of a judge exercising power beyond her authority. Williams was on probation and was charged with a violation. Judge Byers had the power to alter or modify the conditions of probation, including adding the restitution center provision as authorized by § 47-7-47(4).
¶ 63. Where Judge Byers did err is in extending the period of probation beyond the period of five years. It is, of course, within the sound discretion of the circuit court whether to revoke probation for a violation. We have yet to decide whether a criminal defendant may waive his right not to be placed on probation for an extended period beyond five years where the alternative is incarceration. We have held that no sentence is legal if it is beyond the power of the court. Accepting without deciding that we would rule similarly with regard to probation even where there has *975 been a violation of the original probation, I find the error in imposing probation beyond the five-year period, simply an error. It is not sufficient in my mind to warrant any sanction.

II.
¶ 64. While there is much room for disagreement concerning the merits of the contempt action, the fact that this Court has decided the matter notwithstanding,[2] it is clear that there were procedural transgressions in Judge Byers's handling of the matter. Whether those procedural transgressions were willful or not, they represent a drastic departure from our approved procedure for the imposition of a sanction for contempt. As we have noted in Sanders, we have faced the wrongful imposition of the sanction of contempt on a number of occasions. Mississippi Comm'n on Judicial Performance v. Sanders, 749 So.2d 1062 (Miss.1999). Not all such occasions have resulted in proceedings to sanction the erring judicial officer. Nevertheless, we have made it clear that misuse of the contempt power is conduct for which we will impose a sanction.

III.
¶ 65. I agree with the majority that Judge Byers should not be removed. Judge Byers has already been removed by the people of her electoral district. She offered for reelection and was defeated. This is the norm for officials subject to election. Removal from office of those duly elected by the intervention of this Court should not be the norm. It is a sanction which should be reserved for only the most egregious circumstances.
¶ 66. Judge Byers has been subjected to a private reprimand for the misuse of the contempt power on a prior occasion. Her failure to accord the procedural safeguards attendant to contempt proceedings in the instant circumstances, as required by due process of law, should result in heightened but not a drastic sanction. A public reprimand is all that is warranted.

IV.
¶ 67. For the foregoing reasons, I would end this matter by the imposition of a public reprimand for Judge Byers's failure to be familiar with and accord the due process attendant to contempt proceedings. While I acquiesce in the taxing of costs based upon our consistent precedents in these matters, I would not impose a fine in this case.
SMITH, J., JOINS THIS OPINION. McRAE, J., JOINS IN PART.
McRAE, Justice, concurring in part and dissenting in part:
¶ 68. While I agree that Judge Byers deserves some type of discipline for her treatment of Jeffries (throwing her in jail without bond for contempt), I am disturbed by this Court's eagerness to consider mere errors with regard to sentencing as violations of the Code of Judicial Conduct when there exists a better method for dealing with trial court error, i.e. the appellate process. In several previous cases, the Commission has sanctioned judges for correcting orders or re-sentencing defendants where the term of court has ended,[3] *976 yet the majority and the Commission find fault with Judge Byers for not correcting an erroneous sentencing order after the term has ended. Judge Byers should not be faulted for having failed to do that which we have previously sanctioned other judges for doing.
¶ 69. Of the six counts against Judge Byers, five consist of erroneous rulings. Judges make erroneous rulings all the time but these mistakes should not be considered willful misconduct in office. We should not be in the business of disciplining selected judges for their erroneous rulings when the far more accepted method of correcting judicial error is the appellate process. Generally speaking, the cases in a circuit court setting are adversarial. If one party feels that the trial court has committed error, that party may appeal and, if we agree, we correct the error. Indeed, we have previously been presented with illegal sentences, and corrected them, in the context of the appellate process. See, e.g., Sewell v. State, 721 So.2d 129, 142 (Miss.1998) (statute did not permit imposition of sentence and fine); Arnett v. State, 532 So.2d 1003, 1012 (Miss. 1988) (sentence illegal where trial court conditioned seven years imprisonment upon payment of fine); Payne v. State, 462 So.2d 902, 906 (Miss.1984) (seven years with two suspended upon payment of $3,000 fine was indefinite because it could be suspended at any time prior to completion); Smith v. State, 248 So.2d 436, 439 (Miss.1971) (sentence of seven years for first offense error under new Uniform Controlled Substances Act); Brewer v. State, 228 So.2d 582, 584 (Miss.1969) (statute for conviction of possession of illegal drugs required prison sentence in addition to fine). In none of those cases was the trial court reprimanded for his or her erroneous judgment. Either we allow judges to correct their sentencing errors at a later date or we should not find fault with judges who do not.
¶ 70. Moreover, while we admonish members of the Bar that they are to report violations of the Code of Judicial Conduct to the Commission, are we under the same obligation when we reverse a trial judge on appeal? Should every reversal based on an erroneous ruling by the trial court be accompanied by a complaint to the Judicial Performance Commission against the judge who made the ruling? Most of the charges against Judge Byers are similar to the errors we see every day on the appellate level. Just because a judge commits error while on the bench does not ipso facto mean that a Judge has violated the Canons of Judicial Conduct. Perhaps the problem is that the Code is so vague and overbroad that no one can predict what actions may be later said to violate them.
¶ 71. I also disagree with the assessment of a fine and costs. The $1,500 fine assessed against Judge Byers is disproportionate to what we have done in other, very similar, cases. For instance, in Mississippi Comm'n on Judicial Performance v. Sanders, 749 So.2d 1062 (Miss.1999), we ordered that Judge Sanders be publicly reprimanded and we assessed her the costs of the tribunal proceedings. We rejected, however, the Commission's recommendation of a $3,000 fine and imposed no fine. Judge Sanders had been sanctioned once before (and given a private reprimand) and on the second occasion was disciplined for improperly jailing her circuit court clerk. This is Judge Byers's second appearance in a suit brought by the Judicial Performance Commission (she was previously given a private reprimand) and she is now before us charged with improperly jailing a newspaper reporter. Similar offenses should be punished similarly. The fine of $1,500 assessed in this case is *977 disproportionate given what we have done in other cases.
¶ 72. Likewise, in two cases where judges were found to have mishandled criminal cases, we assessed a public reprimand but no fine. Mississippi Comm'n on Judicial Performance v. Vess, 692 So.2d 80 (1997); Mississippi Comm'n on Judicial Performance v. Fletcher, 686 So.2d 1075 (Miss.1996). In the latter case, the justice court judge was found to have incarcerated a defendant without notice or hearing, sentenced another defendant to more jail time than allowed by law and found the same defendant guilty of perjury based upon the judge's own affidavit and warrant. Fletcher, 686 So.2d at 1076. If the conduct of the judges in these two cases did not warrant the assessment of a fine, we should not penalize Judge Byers with a fine.
¶ 73. Nor should Judge Byers be assessed with costs in the amount of $2,023.59. I find no authority in § 177A of the Mississippi Constitution for assessing disciplined judges with costs. The Commission's Certificate of Costs lists $911.29 spent on travel expenses for committee members without further breakdown of those expenses. If this were a civil case wherein the winning litigant requested costs, this type "proof" would be wholly insufficient. See Lovett v. E.L. Garner, Inc., 511 So.2d 1346, 1354 (Miss.1987) (refusing to assess attorneys fees where prevailing party failed to provide documentation of same). No other agency or court is allowed to charge these types of expenses; why is the Judicial Performance Commission any different? The Commission fails to provide any information as to what these "travel" expenses represent or the number of Commission members for which the travel costs were assessed. A committee of three hears the case and submits its findings to the full Commission at its regular meeting. We are without any information as to whether the travel costs, whatever they are, was for the three-member committee or whether they were charged on behalf of the full Commission for its regular meeting or whether the costs represent travel expenses by both the committee and the Commission. Since the Commission may consider more than one case at each meeting, is the Commission allowed to charge each person disciplined for the same "travel"?
¶ 74. Again, sanctions not specifically authorized under § 177A may not be ordered. In re Branan, 419 So.2d 145 (Miss. 1982). Additionally, the mere fact that they can be assessed only when the judge loses before the Commission acts as an incentive for members of the Commission to return a finding of guilt. In the case before us, Judge Byers was apparently never given an itemized list of the costs nor was she ever given an opportunity to challenge the costs. In this respect, we give greater due process to our litigants in civil cases than we do to judges in disciplinary actions. Why?
¶ 75. Finally, there is no authority in § 177A of the Constitution or any statute or rule that specifies the costs to be assessed. While this Court approved the assessment of costs in these type proceedings in Mississippi Comm'n on Judicial Performance v. Russell, 724 So.2d 873 (Miss.1998), there is no reason why we should allow for assessment of costs other than those that are customary. Expenses for meals, lodging, and mileage are not the sort of costs typically awarded litigants in our courts. Nor do courts routinely award costs supported solely by the uncorroborated request of a litigant. The costs and expenses assessed in this case have not been proved by clear and convincing evidence, and we should not rubber stamp them where no testimony has been taken or documentation entered into the record in their support. The Commission failed in its burden to prove the expenses and costs, and the majority errs when it accepts the recommendation of the Commission to assess them in this case.
¶ 76. For these reasons, I concur in the public reprimand of Judge Byers. However, *978 I would allow only the filing fee of $100 and the cost of the transcript ($956.50) and deny all other costs. Therefore, I concur in part and dissent in part.
BANKS, J., joins this opinion in part.
NOTES
[1] This description of the process is taken from the Annual Report of the Mississippi Commission on Judicial Performance (1998).
[2] We are among the minority of states that have held that a person may, in certain instances, willfully violate a court's order based upon its supposed unconstitutionality. Jeffries v. State, 724 So.2d 897 (Miss.1998). The majority of states, as well as the U.S. Supreme Court, have held that a person can not violate a court order without first having it adjudicated as unconstitutional. See, e.g., Walker v. City of Birmingham, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); United States v. Dickinson, 465 F.2d 496 (5th Cir.1972); People v. Sequoia Books, Inc., 172 Ill.App.3d 627, 122 Ill.Dec. 678, 527 N.E.2d 50, 53, 55 (1988).
[3] Mississippi Comm'n on Judicial Performance v. Sanders, 708 So.2d 866 (Miss.1998) (public reprimand for suspending sentence of former client and placing second inmate on probation after his conviction and sentence had been affirmed by Court of Appeals); Mississippi Comm'n on Judicial Performance v. Russell, 691 So.2d 929 (Miss.1997) (where no appeal is taken and defendant begins to serve sentence imposed, time has passed for trial judge to suspend sentence and, if case is affirmed on appeal to the Supreme Court, there is no authority to modify judgment and sentence).