913 So.2d 266 (2005)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Joseph LEWIS.
No. 2004-JP-01002-SCT.
Supreme Court of Mississippi.
March 31, 2005.
*267 Luther T. Brantley, III, Darlene D. Ballard, attorneys for appellant.
Julie Ann Epps, Jackson, attorney for appellee.
EN BANC.
SMITH, Chief Justice, for the Court.
¶ 1. On June 9, 2003, the Mississippi Commission on Judicial Performance filed a Formal Complaint charging Joseph Lewis, Justice Court Judge, District Three, Hinds County, Mississippi, with judicial misconduct constituting willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute and is actionable under Article 6, Section 177A of the Mississippi Constitution of 1890, as amended, and violative of Canon 3(B)(12) of our existing Code of Judicial Conduct.
¶ 2. On January 14, 2004, the hearing on these charges occurred before the Commission's three-member Committee. On April 27, 2004, the Committee filed its Findings of Fact, Conclusions and Recommendations. *268 On May 7, 2004, counsel for the Commission filed written objections to the Committee recommendations. The full Commission rendered its findings, conclusions and recommendations as follows: The Commission found that Judge Lewis had engaged in numerous ex parte communications with litigants in person and by telephonic means. The Commission noted that three females made allegations of sexual advances by Judge Lewis, but these allegations were not considered by the Commission in its findings. The Commission noted two prior public reprimands by this Court against Judge Lewis for one of the same reasons as now under consideration, Mississippi Commission on Judicial Performance v. Lewis, 830 So.2d 1138 (Miss.2002), Mississippi Commission on Judicial Performance v. Lewis, 801 So.2d 704 (Miss.2001), and that Judge Lewis never paid the fines or costs assessed against him by this Court and was never publicly reprimanded in open court as ordered by this Court.
¶ 3. The Commission found that Judge Lewis violated Canons 1, 2 A, 3 B(1), 3 B(2), 3 B(3), 3 B(4), 3 B(7), and 3 E(1)(a) of the Code of Judicial Conduct and Article 6, Section 177A of the Mississippi Constitution of 1890. The Commission recommended to this Court that Judge Lewis be removed from office and assessed costs of the present proceeding in the sum of $2,080.83.
¶ 4. After careful consideration of the relevant facts and circumstances surrounding this case, this Court removes Judge Lewis from office and orders that he pay the costs of this proceedings in the amount of $ 2,080.23 and all costs awarded in prior proceedings.

FACTS
¶ 5. Three different women filed complaints against Judge Lewis. The Commission dismissed the complaint of one of the women's complaint. On June 21, 2002, Judge Lewis engaged in ex parte communications with Jane Doe, a fictitious name, about a judgment he had entered against her regarding a rental agreement. The amount of the judgment against Doe was $1,430 plus interest. After making payments to the plaintiff, Doe, the defendant was confused and upset when her wages continued to be garnished even after she was evicted. When she went to the Courthouse, in hopes of finding an explanation for what she felt was unjust, she came into contact with Judge Lewis, whom she had never met before this specific instance. Once Doe entered Judge Lewis' office so that they could discuss her case, he made several inappropriate sexual advances, all of which she refused. Some of these sexual advances included his suggestion that they go to a private, secluded area in the courthouse. Judge Lewis began their conversation by describing in sexually explicit detail an encounter with another woman. Judge Lewis denied this account. No other witnesses were privy to the conversation. Judge Lewis informed Doe that he would help her and explained that all he had to do was get her back to court to stop the garnishment. When asked if Judge Lewis expected something from Doe in return for his "helping" her, she stated "[t]hat he wanted me to have some type of involvement with him in order for him to assist me in what I needed, because he knew the specifics of what to do, and he had the power to help me . . . I had been evicted, and I was desperate for help. And I felt that he was expecting me to exchange a favor with him for help I needed for my desperation." Judge Lewis also called Doe by telephone at her home, continuing to assure her that he was "helping" her or working on a resolution for her case.
*269 ¶ 6. Rhonda Roe, a fictitious name, the second complainant, filed a civil action in Judge Lewis' court which involved another woman stalking her. Roe had never met Judge Lewis prior to filing this civil action. Judge Lewis had numerous ex parte communications with Roe, in person and by phone, and made sexual advances toward Roe while in his office during one of those meetings. Judge Lewis began the sexual conversation with Roe, commented on how attractive Roe was and said that he was interested in her. Judge Lewis further noted how pretty her hair was and how her ex-boyfriend was going to be sorry for leaving her. He thus told Roe that he wanted to come by her house to see the damage that the defendant in her case had done to her car. Roe testified that Judge Lewis did come by her house, but she did not open the door. Again, Judge Lewis denied the allegations, and there were no other witnesses. When asked if Judge Lewis initiated the phone calls, Roe stated "I can't remember, but whenever we would  we would talk on the phone, it was always  it was hardly ever about my case. Always pertaining to him and getting with him." Judge Lewis improperly dismissed Roe's default judgment and proceeded with the hearing of a counter-suit against Roe after numerous ex parte communications with both parties.
¶ 7. Judge Lewis has never been publicly reprimanded in open court and has failed to pay costs or fines assessed against him for his two previous public reprimands involving the same issues as the case sub judice, as ordered by this Court. On January 14, 2004, Judge Lewis openly admitted that he had not paid any of his fines during the Mississippi Commission on Judicial Performance's Inquiry Concerning a Judge that was heard before the Commission Tribunal. When asked if he was assessed with costs in the amount of $2, 474.52 and if he had paid these costs, Judge Lewis answered "no ma'am." Then, when asked if on January 3, 2002, a mandate was issued by this Court whereby he was publicly reprimanded and assessed costs in the amount of $572.01, Judge Lewis stated "[y]es ma'am, I was aware of that." When asked if the costs had been paid, Judge Lewis answered "[n]o ma'am, nor have I been publicly reprimanded." Finally, Judge Lewis was asked if he agreed with the fact that in December 2002, he received a public reprimand, from this Court, and was assessed costs in that action. He agreed and when asked if the costs, which amounted to $496.40, had been paid, he responded by saying "[n]o ma'am."
¶ 8. The Commission found more than sufficient evidence to meet the burden of proof against Judge Lewis for violation of Counts One and Three of the Formal Complaint, which consisted of ongoing ex parte communications and improper dismissal of Roe's default judgment. The Commission, though not convinced by clear and convincing evidence of claims of sexual misconduct by Judge Lewis against the three women, nevertheless, noted that "the Commission does feel that it is more than mere coincidence that three different women, who are perfect strangers to each other, have made sexual misconduct allegations against the same individual, the Respondent, which allegedly occurred on different occasions, during different times of the year, and even in different years." The Commission did not consider these allegations in making its recommendation to this Court. The Commission recommended that Judge Lewis be removed from office and assessed costs in the amount of $2,080.83.

STANDARD OF REVIEW
¶ 9. "The standard of review for judicial misconduct proceedings is de novo." Miss. Comm'n on Judicial Performance *270 v. Boykin, 763 So.2d 872, 874 (Miss.2000) (citing Miss. Comm'n on Judicial Performance v. Gunn, 614 So.2d 387, 389 (Miss.1993)). The Commission's findings, based on clear and convincing evidence, are given "great deference." Id. This Court, however, is obligated to conduct an independent inquiry. Miss. Comm'n on Judicial Performance v. Neal, 774 So.2d 414, 416 (Miss.2000). "Even though the Commission's findings are considered, this Court is not bound by the findings and additional sanctions may be imposed." Miss. Comm'n on Judicial Performance v. Warren, 791 So.2d 194, 196-97 (Miss.2001) (citing Miss. Comm'n on Judicial Performance v. Whitten, 687 So.2d 744, 746 (Miss.1997)). The Commission did not consider the allegations of the three women in making its recommendation to this Court. However, we can and have considered the allegations of two of the women, Doe and Roe, which we find are meritorious, credible, and thus aggravating with regards to the disposition of this matter.

ANALYSIS
I. Whether Judge Lewis' Conduct Constitutes Willful Misconduct in Office and Conduct Prejudicial to the Administration of Justice Which Brings the Judicial Office into Disrepute Pursuant to Section 177a of the Mississippi Constitution of 1890, as Amended, and a Violation of Canons 1, 2 a 2 b, 3 b(1), 3 b(2), 3 b(3), 3 b(4), 3 b(7) and 3 e (1)(A) of the Code of Judicial Conduct of Mississippi Judges.
¶ 10. The Commission found that Judge Lewis violated the above-cited canons and Section 177A of the Constitution by repeatedly engaging in ex parte communications with litigants based upon the clear and convincing evidence and testimony at the hearing. More critically, Judge Lewis himself admitted these allegations regarding the ex parte communications. We agree with the Commission and also find Judge Lewis to be in violation of the canons based on the clear and convincing evidence found within the testimony of Jane Doe and Rhonda Roe regarding his repeated engagement in ex parte communication with and sexual advances toward litigants in his court.
¶ 11. By engaging in ex parte communications, Judge Lewis denied the parties the safeguards afforded them as well as their expectations that they can present evidence to an unbiased trier of fact, thereby disrupting the requirement of order and decorum in proceedings before the judge. Judge Lewis' persistence in violating the rules against ex parte communication, create an appearance of special treatment for the litigant, thereby tainting the dignity of the judicial system as a whole. By engaging in ex parte communications with litigants, both alone with litigants in his chambers and by telephone calls often initiated by Judge Lewis, he failed to uphold the integrity and independence of the judiciary. Such conduct brings the integrity of the judiciary into serious question in clear violation of Canon 1. Such conduct not only created an appearance of impropriety, but in fact, is an actual impropriety in that he failed to respect and comply with the law in violation of Canon 2 A. Judge Lewis, by discussing litigant's cases ex parte, conveyed the impression that these litigants were in a special position to influence the judge in violation of Canon 2 B. Canon 3 B requires disqualification based upon Judge Lewis' ex parte communications and personal knowledge acquired from the litigants about the cases, so he consequently violated Canon 3 B. Clearly, Judge Lewis' repeated participation in ex parte communications was a violation of *271 Canon 3 B(2), in that he was not faithful to the law. Judge Lewis also failed to require order and decorum in proceedings before him. Further, it was completely impossible for him to have presented himself as an unbiased trier of fact. Judge Lewis' repeated ex parte communications with litigants created an appearance of special treatment for the litigant, thereby tainting the dignity of the judicial system as a whole. Judge Lewis thus violated Canons 3 B(3) and 3 B(4).
¶ 12. Canon 3 B(7) is the canon clearly prohibiting ex parte communications. By repeatedly engaging in ex parte communications with litigants in his private chambers to discuss their cases and initiating telephone communication with litigants, Judge Lewis violated this canon. In Mississippi Commission on Judicial Performance v. Chinn, 611 So.2d 849, 852 (Miss. 1992), this Court, considering Canon 3 A(4), the predecessor of current 3 B(7), stated, "[f]or a judge to merely listen to another person involved in pending litigation is a violation of Canon 3 A(4)." See also Miss. Comm'n of Judicial Performance v. Dodds, 680 So.2d 180, 190-91 (Miss.1996).
¶ 13. In addition to Judge Lewis' aforementioned violations, this Court is even more disturbed by his prior record before the Commission as well as this Court. On October 23, 2000, the Commission issued a private admonishment and assessed court costs for an incident where Judge Lewis issued an arrest warrant for a Jackson police officer wherein Judge Lewis had been a witness to an alleged incident, about which he had ex parte communications with a participant in the incident. He also called the media about a police roadblock and verbally attacked the Mayor of Jackson for what he perceived as police harassment of black-owned businesses. Judge Lewis agreed that his "continuing course of misconduct" was inappropriate, and he agreed to reacquaint himself with the judicial canons so that similar conduct would not occur again.
¶ 14. Similarly, in Mississippi Commission on Judicial Performance v. Lewis, 801 So.2d 704 (Miss.2001), this Court, in considering Judge Lewis' ex parte communications with litigants from the Alcohol Beverage Control Division, accepted the recommendation of the Commission and assessed court costs and a public reprimand. Also, in Mississippi Commission on Judicial Performance v. Lewis, 830 So.2d 1138, 1139 (Miss.2002), Judge Lewis retained possession of a firearm that was seized from a defendant that had been charged with spotlighting a deer and using improper shot size. Judge Lewis allowed the defendant to plead guilty to failure to dim headlights. Id. The Commission recommended a public reprimand and assessed court costs which this Court accepted. Id. at 1144. This Court noted that Judge Lewis had been disciplined on two prior occasions. Id. at 1143.
¶ 15. It is undisputably obvious to this Court that Judge Lewis has miserably failed to adhere to the Canons. His prior disciplinary proceedings have apparently been to no avail, as Judge Lewis has not altered his repeated violations of the prohibition of ex parte communication with litigants. Judge Lewis has engaged in lengthy patterns of repeated misconduct and continues to display a flagrant disregard for the Canons, the authority of this Court, and the law he is charged with adhering to. In re Collins, 524 So.2d 553, 557 (Miss.1987). Judge Lewis' history, in addition to his continued ex parte communications, constitutes a myriad of violations of the Canons. Miss. Comm'n on Judicial Performance v. Gunn, 614 So.2d 387, 390 (Miss.1993).
*272 ¶ 16. This Court has previously stated, "[a] judge may also, through negligence or ignorance, not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the office into disrepute. The result is the same regardless of whether bad faith or negligence and ignorance are involved and warrants sanctions." In re Anderson, 451 So.2d 232, 234 (Miss.1984).
¶ 17. After careful review of this record, we find that Judge Lewis' prior infractions for ex parte communications is a pattern of misconduct. When coupled with his failure to pay previous court costs and submit to a public reprimand as ordered by this Court, and his continuing disregard of the Canons such conduct clearly warrants his removal from office, an assessment of all costs of these proceedings, and assessment of costs of all previously assessed against him.
¶ 18. Since this Court is indeed the trier of fact and has sole power to impose sanctions, we find that Judge Lewis did also, in fact, engage in improper sexual advances with two of the three women who testified. The Commission did not consider the testimony of the third woman to be reliable and dismissed her complaint. We agree, and we will not consider the third woman's testimony. Even so, we find that the evidence contained in the record by Doe and Roe is unambiguous, and it establishes that the greater burden of clear and convincing evidence was undeniably met. Further, we agree that the circumstances pertaining to these women seems more than coincidental, and accordingly, we find Doe and Roe to be credible witnesses. As the Commission noted, we agree that it is more than mere coincidence that three different women, who are perfect strangers to each other, have made sexual misconduct allegations against the same individual which allegedly occurred on different occasions, during different times of the year, and even in different years. Nevertheless, even though the Commission did not consider this evidence in reaching its decision, we have permissibly considered this evidence because the applicable standard of review is de novo.
¶ 19. Prior disciplinary proceedings and sanctions have had no effect on Judge Lewis. The purpose of such proceedings is to preserve the integrity of the judiciary and restore public confidence in the administration of justice. It is impossible to find that Judge Lewis has satisfied such high criteria concerning his situation. This Court has examined the mitigating factors to be considered in determining discipline as set forth in Mississippi Commission on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004) (modifying In re Baker, 535 So.2d 47, 54 (Miss.1988)). Upon examining these factors, we find the following: (1) Judge Lewis' service length and character is in excess of eight years at the time of this filing and his prior disciplinary record is set out heretofore; (2) This record is silent to any positive contributions made by Judge Lewis to the courts and the community; (3) As to lack of prior judicial precedent on the incident in issue, here, there is more than ample judicial precedent directly on point, including precedent involving Judge Lewis himself; (4) The record contains no information regarding any commitment to fairness and innovative procedural reform by Judge Lewis; (5) Judge Lewis' willful disregard for a prior private admonishment and two public reprimands, failure to pay the costs associated therewith, or to be reprimanded in open court as required by this Court illustrates the magnitude of the offense and indifference to litigants and this Court in continuing to engage in ex parte communications *273 with litigants; (6) Although it is almost impossible to ascertain the number of persons affected by his conduct, we do know that at least two female complainants and witnesses were affected; (7) The facts and circumstances of this case more than adequately support a finding of moral turpitude. Id. at 1158.
¶ 20. When the facts of the case and law dictate, this Court has a duty and responsibility to remove a judge. Miss. Comm'n on Judicial Performance v. Willard, 788 So.2d 736 (Miss.2001); Miss. Comm'n on Judicial Performance v. Spencer, 725 So.2d 171 (Miss.1998); Miss. Comm'n on Judicial Performance v. Jenkins, 725 So.2d 162 (Miss.1998); Miss. Comm'n on Judicial Performance v. Dodds, 680 So.2d 180 (Miss.1996); Miss. Comm'n on Judicial Performance v. Milling, 651 So.2d 531 (Miss.1995). Finally, this Court has stated that "[j]udges are called upon to exemplify the highest standards of conduct in a variety of situations and have a duty to conduct themselves with respect for those they serve, including the court staff and the litigants that come before them." Willard, 788 So.2d at 746 (citing Spencer, 725 So.2d at 178).

CONCLUSION
¶ 21. For the aforementioned reasons, this Court removes Joseph Lewis from office as Hinds County Justice Court Judge, District Three, and directs that Lewis shall pay the costs of this proceeding in the amount of $2,080.23, and all prior costs of the other proceedings.
¶ 22. The Clerk of this Court is directed to mail a copy of this opinion to the Hinds County Board of Supervisors and the Clerks of the Hinds County Chancery, Circuit and Justice Courts.
¶ 23. JUSTICE COURT JUDGE JOSEPH LEWIS, DISTRICT 3, HINDS COUNTY, IS HEREBY REMOVED FROM OFFICE, SHALL PAY THE COSTS OF THIS PROCEEDING IN THE AMOUNT OF $2,080.23, AND PAY ALL PRIOR COSTS.
COBB, P.J., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, P.J., AND EASLEY, J. DIAZ, J., NOT PARTICIPATING.
GRAVES, Justice, Dissenting:
¶ 24. The majority's decision to remove Judge Lewis from office is inappropriate, unjustified and unfair. This ultimate sanction is not supported by the record in this matter. Therefore, I respectfully dissent.
¶ 25. This Court is not bound by the Commission's findings and has sole discretion in determining the appropriate discipline for the misconduct alleged. Miss. Comm'n on Judicial Performance v. Bishop, 761 So.2d 195, 198 (Miss.2000). The sanctions imposed should fit the offense with which the judge is charged. Miss. Comm'n on Judicial Performance v. Hartzog, 646 So.2d 1319, 1322 (Miss.1994) (citing In re Bailey, 541 So.2d 1036, 1040 (Miss.1989)). A lack of improper motive will not preclude discipline, but will be considered as a mitigating factor. Id (citing In re Bailey, 541 So.2d at 1040).
¶ 26. Three women made allegations of sexual misconduct and ex parte communications against Judge Lewis. The Commission "found significant discrepancies in the overall testimony of one woman such that her reliability came into question and the Commission did not consider her allegations any further, and dismissed her complaint." The Commission found that the claims of sexual misconduct as to Jane Doe and Rhonda Roe were not established by clear and convincing evidence. The *274 only claims found by the Commission to be supported by clear and convincing evidence were the claims of ex parte communications as to Doe and Roe.
¶ 27. However, the majority of this Court finds "that Judge Lewis did also, in fact, engage in improper sexual advances with two of the three women who testified." The majority incredulously goes on to say:
Even so, we find that the evidence contained in the record by Doe and Roe is unambiguous, and it establishes that the greater burden of clear and convincing evidence was undeniably met. Further, we agree that the circumstances pertaining to these women seems more than coincidental, and accordingly, we find Doe and Roe to be credible witnesses.
¶ 28. I disagree. In reviewing the record in this matter, I find that the evidence regarding sexual misconduct is ambiguous and lacks credibility. There are allegations by three women. The first was found not credible by the Commission and the majority. A second woman claims that he implied he wanted to have sexual relations by discussing another woman's behavior and referring to a private room and that he never mentioned anything inappropriate on the telephone. A third claims that he implied that he wanted to have sexual relations by complimenting her and that he always acted inappropriately on the telephone. There is neither a pattern of behavior nor is there any consistency in the alleged misconduct.

THE DOE COMPLAINT
¶ 29. As to Jane Doe, the majority says Judge Lewis made "several inappropriate sexual advances, all of which she refused. Some of these sexual advances included his suggestion that they go to a private, secluded area in the courthouse." Again, the record does not support the majority's allegation that Judge Lewis made "several inappropriate sexual advances" toward Doe. In addition to what is set out by the majority, Doe testified:
[Doe:] Yes, he told me that he would help me. And he explained the procedure he would do, like going back to court and what all he had to do to get me back to court and stop the garnishment.
[Counsel for Commission:] And in exchange for helping you, were you expected to do anything for him?
[Doe:] At that time, we were talking about the case, and as I got ready to leave the office, that was the end of the conversation. There was nothing left to discuss at this point. And at that time I got ready to leave because I was on my lunch break. And as I was leaving, he came from behind the desk.
And I was  I was walking a few feet ahead of him, and he started telling me about a part of the building that we could go to that would be private. And I just kept walking because I didn't understand, I mean, why he was talking to me like that. He was a judge.
¶ 30. Doe testified that she called Judge Lewis repeatedly after meeting with him and that he told her he would assist her with her case, but that he never said anything sexually inappropriate. On cross-examination, Doe admitted that Judge Lewis never said he expected anything from her.
[Counsel for Lewis:] All right. And he never said to you he expected something in return from you, did he?
[Doe:] Not in those words. In his behavior, though. He didn't say that.
[Counsel:] Okay. And you and I agree, people can perceive things different ways, can't they?
[Doe:] That's true.

*275 [Counsel:] What you may have perceived may not be what someone else would perceive?
[Doe:] May not.
[Counsel:] But Judge Lewis never asked you to have any type of sexual conduct with him, did he?
[Doe:] Not out-and-out, but his behavior.
[Counsel:] All right. And tell me, how was  was he calm? Was he mad? Was he angry? What was he with you?
[Doe:] My interpretation of him when I talked with him, he was giddy. He was in a good mood, playful.
[Counsel:] Joking?
[Doe:] Jokingly. That's the impression that I saw when I saw him.
¶ 31. Doe further testified that Judge Lewis walked with her to the elevator, but that nothing else was said by either party. She denied making any sort of threatening comment about Judge Lewis. However, Wanda Spann, who was at justice court that day on an unrelated matter, testified that she overheard Doe asking Judge Lewis to help her. Spann further testified that after Judge Lewis said he was not going to help her and got on the elevator, Doe said "[t]he fat M.F. is going to wish he had never messed with me." Judge Lewis denies that he made any inappropriate sexual comments to Doe, and he testified that his office door was open when he spoke with her. Further, Judge Lewis made tape recordings of some of his telephone conversations with Doe. However, the Commission found the tapes to be inadmissible.
¶ 32. Doe also denied having made a complaint against the landlord with whom she was involved in litigation. However, the landlord testified that Doe had filed a complaint against him with the mayor's office. The landlord further testified that Doe often answered the door wearing a see-through teddy when he attempted to collect rent from her. The Commission found the proof insufficient to support Doe's claim of sexual misconduct.

THE ROE COMPLAINT
¶ 33. Rhonda Roe's claims are set out above by the majority. However, the majority does not set out Judge Lewis' version of the events. Judge Lewis testified as to the comments he made to Roe:
[Counsel:] Would you tell this body whether or not you ever in any manner made any sexual advances toward Ms. Roe.
[Lewis:] I did not make any sexual advances toward Ms. Roe. However, in her claim, I did tell Ms. Roe, because she was going on and on about this three-years-and-sixth-month period she had been going with that boy, and she was really upset about it.
And I told her, I said, "Ms. Roe, calm down." I said, "You're a nice-looking lady. You're gainfully employed. You're part-time military." I said, "Forget him. Move on with your life and let him dream about what he's missed."
And that was the gist of our conversation. As far as any advances or wanting her or touching her, it's out of the question.
¶ 34. Judge Lewis testified that he first met with Roe because he was told she was there about filing a peace bond. Roe was involved in litigation with her ex-boyfriend and his current girlfriend, Tonya Thomas. She initially went to see Judge Lewis about a peace bond on a warrant that was never issued against Thomas. Judge Lewis testified that Thomas appeared the following day and said that she was never served with process in a civil case filed by Roe in which a default judgment was entered against Thomas. The default judgment was set aside and Thomas filed a counter-claim *276 against Roe. Judge Lewis testified that at trial:
I put Ms. Roe on the stand under oath. I asked her, I said, "Ma'am, other than you coming to complain about a peace bond being served, have we had any other contact or anything outside of the realm of me being a judge?"
She said, "No."
I said, "Have we discussed in any way this civil case?
She said, "No."
I said, "Have you rode in my car?"
She said, "No."
"Have I rode in your car?"
She said, "No."
"Have I been to your house?"
She said, "No."
I said, "Have you been to my house?"
She said, "No."
I said, "Does either party at this point have a problem going forward with this case?"
They both said, "No."
¶ 35. This exchange was confirmed by former deputy clerk Jacquelyn Vann, who was present in the courtroom and testified before the Commission.
¶ 36. After trial, the original claim filed by Roe was dismissed, and a judgment was entered on the counterclaim. Roe denied that she became irate or that she had to be escorted out of the courtroom by a constable. However, Hinds County Constable Rubin Isaac testified that Roe was highly upset and that he had to escort her from the courtroom. Roe also testified that "since I didn't agree with the ruling, I wrote this letter to the Judicial Committee. My checks were garnisheered [sic], and this was also put on my credit report."
¶ 37. Roe further filed complaints against two Jackson Police Officers who testified in justice court. Officer Derrick Hearn, with the Jackson Police Department Internal Affairs Division, testified that he was sent to justice court to find out if the two officers Roe complained about had been subpoenaed to testify. Hearn further testified that while he was at the courthouse, he heard Roe make "a statement that if the judge didn't reschedule a hearing on her case, then she was going to tell them that he's been coming by her house in a black car with a Jackson State tag on it, you know, following her or something." The Commission found the proof insufficient to support Roe's claim of sexual misconduct.

EX PARTE COMMUNICATIONS
¶ 38. Dealing strictly with the claims of ex parte communications, the majority states: "More critically, Judge Lewis himself admitted these allegations regarding the ex parte communications." Again, the record does not support such a statement. Judge Lewis did not admit these allegations; he admitted that he had engaged in some ex parte communications.
¶ 39. As for Doe, she went to talk to Judge Lewis after a judgment was entered against her and her paycheck was garnished. Her case was already concluded. Judge Lewis testified that Doe went to the court and was claiming that she had paid the garnishment, but that money was still being taken out of her check. He told her that she would have to provide the court with a receipt or some sort of paperwork to set aside the garnishment.
¶ 40. As for Roe, a default judgment had already been entered in her favor in her civil case. She went to see Judge Lewis about a peace bond. The instigation of peace bond proceedings are often ex parte. After the default judgment was set aside and a counterclaim was filed, Judge Lewis attempted to correct any lapse in judgment by inquiring at trial as to whether *277 either party had a problem with him hearing the case.
¶ 41. The Commission's original recommendation was that Judge Lewis should be publicly reprimanded, suspended from his office for a period of not less than 30 days, without compensation, salary or benefits, and that he be ordered to pay all costs. Counsel for the Commission objected, and the recommendation was made to remove Judge Lewis from office.

PRIOR DISCIPLINARY ACTION
¶ 42. The majority finds that Judge Lewis should be removed from office and improperly relies on previous matters to support such a sanction. The majority states that Judge Lewis has had "two previous public reprimands involving the same issues as the case sub judice." That is incorrect. Judge Lewis was publicly reprimanded and assessed court costs in Mississippi Comm'n on Judicial Performance v. Lewis, 801 So.2d 704 (Miss.2001), for ex parte communications with litigants from the Alcohol Beverage Control Division of the State Tax Commission. In Mississippi Comm'n on Judicial Performance v. Lewis, 830 So.2d 1138 (Miss.2002), Judge Lewis was publicly reprimanded and assessed court costs for failing to return a firearm. On at least two occasions, the majority makes mention of Judge Lewis' "failure" to pay previous court costs and submit to a public reprimand. The formal complaint filed by the Commission makes no claim pertaining to Judge Lewis' failure to pay court costs or submit to a public reprimand in any other case. Therefore, Judge Lewis has not been afforded due process and reliance on those matters as a basis for sanctions herein is inappropriate and unfair.
¶ 43. The cases cited by the majority are distinguishable as they all involved multiple counts of behavior much more egregious than ex parte communications. In Mississippi Comm'n on Judicial Performance v. Dodds, 680 So.2d 180 (Miss. 1996), we removed a judge who engaged in ticket fixing, improperly handled DUI cases, accepted money without legal authority, engaged in ex parte communications, signed and executed a judgment without legal authority and obstructed the judicial process. In Mississippi Comm'n on Judicial Performance v. Spencer, 725 So.2d 171 (Miss.1998), we removed a justice court judge for a continuing pattern of offensive sexual comments, ex parte communications, demeanor and disrespect for litigants and witnesses, and failure to sign cases and act on affidavits. Judge Spencer's sexual harassment of female court personnel was corroborated by several witnesses and established by clear and convincing evidence. In Mississippi Comm'n on Judicial Performance v. Willard, 788 So.2d 736 (Miss.2001), we found that the judge's systematic pattern of ex parte communications, misuse of contempt powers, abuse of process and partiality, and lack of integrity and candor throughout the investigatory process warranted his removal from office. The Commission found that 24 of the 31 counts against Judge Willard were proven by clear and convincing evidence.
¶ 44. Our precedents do not authorize removal based solely on ex parte communications absent other behavior such as ticket fixing, improperly dismissing criminal charges, etc. In Mississippi Comm'n on Judicial Performance v. Peyton, 812 So.2d 204 (Miss.2002), we suspended a justice court judge for thirty days without pay and assessed $100 in court costs for appointing his daughter, a Yazoo County public defender, to represent a murder suspect before his court, conducting an ex parte bond reduction hearing and sua sponte setting aside a judgment. Judge Peyton had previously been reprimanded *278 for ex parte communications, improperly dismissing a burglary charge, political activity and attempting to have another justice court judge dismiss a traffic violation.
¶ 45. In Mississippi Comm'n on Judicial Performance v. Gunn, 614 So.2d 387 (Miss.1993), we found that the proposed punishment of a public reprimand and assessment of court costs was proper where a justice court judge dismissed eight traffic tickets without hearing or notice to the officer issuing the citations, dismissed tickets assigned to other justice court judges, refused to hear scheduled cases on two occasions, and participated in ex parte communications. In Mississippi Comm'n on Judicial Performance v. Bowen, 662 So.2d 551 (Miss.1995), we held that a public reprimand and fine were warranted where judge dismissed speeding and traffic tickets and engaged in ex parte communications. See also Miss. Comm'n on Judicial Performance v. Vess, 692 So.2d 80 (Miss.1997) (public reprimand for ex parte communications, interfering with right to post bond in case in which judge signed defendant's warrant); See also Miss. Comm'n on Judicial Performance v. Emmanuel, 688 So.2d 222 (Miss.1996) (public reprimand for improperly reducing DUI charges in violation of statute, ordering fines in excess of statutory limits, failing to require affidavits, issuing orders without authority and allowing cameras in courtroom).
¶ 46. The Commission in the case sub judice, after hearing the testimony and observing the demeanor of the witnesses, properly found that there was not clear and convincing evidence of any sexual misconduct. Judge Lewis admitted he engaged in ex parte communications. Thus, the Commission properly found clear and convincing evidence of such. Under established precedent, the punishment for such an offense has typically been public reprimand. In light of Judge Lewis' prior reprimands, a more severe penalty is warranted. However, the record in this matter and the applicable case law do not support removal from office. Removal from office is a draconian measure that should not occur absent extraordinary circumstances, particularly in a State where the electoral process provides that in due course voters can elect a different person as judge if they so choose. Because I would find that Judge Lewis' ex parte communications warrant a public reprimand, suspension from office for thirty days without pay, and assessment of court costs, I must respectfully dissent.
WALLER, P.J., AND EASLEY, J., JOIN THIS SEPARATE OPINION.