KITCHENS, Justice,
concurring in part and dissenting in part:
¶ 21. I must respectfully dissent from the portion of today’s opinion that adds a thirty-day suspension to the sanctions recommended by the Commission. Judge Patton agreed to the Commission’s recommendation, and the recommended sanctions are consistent with our prior rulings in similar cases. This Court, in my judgment, should accept that recommendation rather than imposing heightened sanctions that are unwarranted by the facts. I specifically take issue with the majority’s finding that Judge Patton’s conduct evinces a pattern of bad behavior and that his conduct involved moral turpitude.
*635 ¶ 22. While this Court has the ultimate authority over the imposition of sanctions, it is well settled that sanctions .in any disciplinary action should be consistent with previous, similar cases. Miss. Comm’n on Judicial Performance v. Sanford, 941 So.2d 209, 215 (Miss.2006) (citing In re Bailey, 541 So.2d 1036, 1039 (Miss.1989)). The majority’s decision to impose heightened sanctions on a finding of moral turpitude is not warranted by the facts and is in conflict with prior cases involving similar conduct. In addition, the majority is not justified in finding, contrary to the Commission’s conclusions, that the acts in this case show a pattern of misconduct; this is the first occasion upon which Judge Patton has been sanctioned by this Court in the course of a career on the bench that is in its third decade.
¶ 23. The determination of sanctions for judicial misconduct and the appropriateness of a sanction are based on a finding of these well-known factors: (1) the length and character of the judge’s public service; (2) whether there is prior case law on point; (3) the magnitude of the offense and the harm suffered; (4) whether the misconduct is an isolated incident or evidences a pattern of conduct; (5) whether moral turpitude was involved; and (6) the presence or absence of mitigating or aggravating circumstances. Miss. Comm’n on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004).
¶24. Moral turpitude is a notoriously undefined term of art, and our decisions do not shed much light on its meaning. For the purposes of judicial discipline, it “includes, but is not limited to, actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute.” Sanford, 941 So.2d at 217 (Miss. 2006) (quoting Gibson, 883 So.2d at 1158). In the context of criminal and tort law, this Court has said that moral turpitude “has been defined as inherent baseness or vileness of principle in the human heart., It means, in general, shameful wickedness, so extreme a departure from ordinary standards of honesty, good morals, justice or ethics as to be shocking to the moral sense of the community.” Speed v. Scott, 787 So.2d 626, 633 (Miss.2001) (quoting Restatement (Second) Torts § 571, cmt. g (1977)). In the context of attorney discipline, this Court has held, for instance, that the intentional conversion of client funds for one’s own use constitutes attorney conduct involving moral turpitude. See, e.g., Miss. Bar v. Sweeney, 849 So.2d 884, 888 (Miss.2003); Miss. State Bar Ass’n v. Strickland, 492 So.2d 567, 571 (Miss.1986).
¶ 25. The United States Supreme Court, in the context of deportable offenses under immigration law, has refused to assign a fixed meaning to the term “moral turpitude,” other than to hold that crimes involving an element of fraud implicate that term. Jordan v. De George, 341 U.S. 223, 232, 71 S.Ct. 703, 708, 95 L.Ed. 886 (1951). In reaching its decision that conspiracy to defraud the United States is a deportable offense involving moral turpitude, that Court stated “that fraud has consistently been regarded as such a contaminating component in any crime that American courts have, without exception, included such crimes within the scope of moral turpitude.” Id. at 228, 71 S.Ct. 703. Of course, that analysis, while incorporating fraud, brings this Court no closer to an exhaustive definition. Indeed, Justice Jackson, in his dissent to that decision, condemned the use of the term in the law as insufficiently definite' to pass constitutional muster. Id. at 232, 71 S.Ct. 703 (Jackson, J., dissenting). After noting that resort to a dictionary renders the meaning of the phrase as “morally immor *636 al,” Justice Jackson argued that the terra should have no application in law as an aggravating factor, writing:
We should not forget that criminality is one thing — a matter of law — and that morality, ethics and religious teachings are another. Their relations have puzzled the best of men. Assassination, for example, whose criminality no one doubts, has been the subject of serious debate as to its morality. This does not make crime less criminal, but it shows on what treacherous grounds we tread when we undertake to translate ethical concepts into legal ones, case by case. We usually end up by condemning all that we personally disapprove and for no better reason than that we disapprove it. In fact, what better reason is there? Uniformity and equal protection of the law can come only from a statutory definition of fairly stable and confined bounds.
Id. at 241, 71 S.Ct. 703. We may take heed of Justice Jackson’s admonition without completely rejecting the idea that some acts, within the context of circumstances, deserve moral condemnation. Whatever the definition of moral turpitude should be for our purposes, it should be clear that its application as an aggravating factor should occur only where the facts warrant our strongest condemnation. In addition, if fraud is a touchstone, it indicates that a finding of moral turpitude requires this Court to look beyond the sanctionable conduct itself and examine, as well, the intent underlying the behavior in question.
¶ 26. In line with that principle, this Court has said that a finding of moral turpitude requires a determination of “whether a judge’s conduct crosses the line from simple negligence or mistake, to willful conduct which takes advantage of a judge’s position for greed or other inappropriate motives.” Miss. Comm’n on Judicial Performance v. Gordon, 955 So.2d 300, 305 (Miss.2007) (holding that fixing tickets by passing them to the inactive files without requiring the defendants to appear in court and over the objections of the issuing officer constituted moral turpitude). Thus, heightened sanctions may be appropriate when there is a finding that the conduct “willfully subverts justice.” Id. Therefore, if the facts presented to us do not support a conclusion that the motives of the judge being sanctioned were inappropriate, we should refrain from finding that moral turpitude has been implicated.
¶ 27. The majority cites Mississippi Commission on Judicial Performance v. Lewis, 913 So.2d 266 (Miss.2005), for the proposition that sanctions beyond fines and public reprimands are appropriate where judicial misconduct involves improper ex parte communications and improper dismissals. The majority, in the present case, however, fails to recount the underlying facts that led it to a finding of moral turpitude in that case. In Lewis, 913 So.2d at 268, the judge had engaged in ex parte communications in order to make sexual advances toward several women. The improper dismissal cited by this Court was intended by him to aid the judge’s sexual advances. Id. at 269. The improper ex parte communications were not confined to meetings with the complainants in chambers but also included telephone calls, sexual in content, made by the judge to at least one of the complainants at her home. Id. at 268. The judge had been sanctioned numerous times prior to the cited action and had failed to pay fines and costs imposed for those previous sanctions. Id. It was clear in that case that the improper conduct was not only prejudicial to the administration of justice, but also in furtherance of the judge’s personal ends in conflict with his role as an officer of the *637 court. This Court specifically found that the judge’s conduct made it impossible for him to present himself as an unbiased trier of fact. Id. at 271. Unlike today’s case, the Leiuis opinion extensively discussed the facts that supported a conclusion that the sanctionable conduct was not merely in violation of the Canons, but involved significant aggravating circumstances.
¶ 28. Here, this Court uses the inclusive definition of moral turpitude in a manner that is inconsistent with the fundamental premise underlying that factor: that some wrongful acts by judges, committed in furtherance of their private interests, are so repugnant to the basic standards of social expectations that we must condemn and punish -them more harshly than we would condemn and punish other wrongful acts. Here, the majority does not hold that Judge Patton’s conduct was in any way fraudulent, intended to further his own interests to the detriment of the judiciary, motivated by greed, or was otherwise so morally repugnant that society as a whole would find his conduct shocking. The majority simply states that, as his conduct interfered with the administration of justice, heightened sanctions are appropriate.
¶ 29. Our jurisprudence cries out for consistency on this point. Not every ex parte communication is the product of a base heart; not every improper dismissal is the product of the desire for personal gain at the expense of the impartial administration of justice. Judges are human, and therefore inherently imperfect; the Canons impose a standard of conduct that is not impossibly high, but also sanctions conduct that is the product of human flaws or frailty but is not necessarily wicked, deceitful, fraudulent or vile. We should take it as a limiting principle that even actions amounting to willful misconduct do not constitute wrongdoing that is the product of impurity or immorality unless the totality of the circumstances so indicates. Where, as here, there is no allegation and no proof that the judge subject to discipline acted in furtherance of his self-interests, with an intent to defraud, with inherent baseness or vileness of principle, with deceit — in short, with shameful wickedness — this Court should not make a finding that moral turpitude is present.
¶ 30. I also take issue with the majority opinion’s characterization of Judge Patton’s conduct as a pattern of behavior. The Commission made no ■ such finding, and the facts in the record do not support that conclusion. While I do not dispute that Judge Patton’s conduct in these three cases violated the Canons, it does not necessarily follow that improper conduct in three cases over the course of a 20-plus-year career on the bench with no prior disciplinary actions constitutes a pattern. The majority cites Mississippi Commission on Judicial Performance v. Cowart, 936 So.2d 343, 350 (Miss.2006), and Mississippi Commission on Judicial Performance v. Bradford, 18 So.3d 251, 256 (Miss.2009), for the proposition that three incidents within one formal complaint constitute a pattern. I note that, in Cowart, each of the three incidents alluded to by the majority involved substantially identical misconduct of improperly remanding traffic citations and then reinstating them on the active docket. Cowart, 936 So.2d at 345-46. If three incidents reported within one disciplinary action is the de minimis standard to be employed by this Court with respect to a finding of a pattern of conduct, then we should, at the very least, also make a finding that the conduct in question is so substantially similar, if not identical, that it warrants application of this factor' when we refuse to adopt a recommendation of the Commission.
*638 ¶ 31. The majority also relies on Mississippi Commission on Judicial Performance v. Britton, 936 So.2d 898 (Miss.2006), and Gordon, 955 So.2d 300, as similar cases in which the Court was justified in imposing heightened sanctions for a first public infraction. As noted above, this Court in Gordon ruled a single disciplinary action involving fourteen separate acts of ticket fixing, despite the egregiousness of the conduct, did not constitute a pattern of conduct. Gordon, 955 So.2d at 305. And, in Britton, the judge had been before the Commission on six separate occasions over a six-year period, each time for infractions involving similar conduct. Britton, 936 So.2d at 907. In both Britton and Gordon, this Court made extensive findings of fact to support the conclusion that the conduct was sufficiently egregious, either by a finding of moral turpitude or of a pattern of conduct, to justify enhanced sanctions. Here, the Court does not support its ruling that aggravating circumstances, including its findings of moral turpitude and a pattern of conduct, are present. As such, suspension in this case is not appropriate.
¶ 32. For the above reasons, I respectfully concur in part and dissent in part.
CHANDLER AND PIERCE, JJ., JOIN THIS OPINION.