## Ex Parte William Dig.

1. Imprisonment for Debt.    *Constitution* 1890, *sec.* 30.    *Fines.*    *Costs.*
   *Penalties.*

   Constitution 1890, sec. 30, prohibiting imprisonment for debt, does
   not extend to nor embrace any pecuniary obligation imposed by
   the state as a punishment for crime, whether the money de-
   manded be for fines, costs, or penalties of a monetary nature
   which may be lawfully inflicted by a court in criminal or *quasi*
   criminal proceedings.

2. Same.    *Laws* 1894, *ch.* 76, *p.* 67 ; *Amended Laws* 1896, *ch.* 133, *p.* 146.
   *Clothing furnished convict.    Conditional pardon.*

   Under Laws 1894, ch. 76, p. 67, as amended, Laws 1896, ch. 133, p.
   146, providing that a convict sentenced to imprisonment in the
   county jail and to pay a fine shall remain committed after the
   expiration of the term until the fine, costs, and jail fees are
   paid, unless discharged by due course of law, and if the fine,
   costs, and jail fees are not promptly paid the convict shall work
   out the amount for the county contractor, who is required to
   furnish him with proper clothing, and (sec. 22, p. 72) de-
   claring that a convict in custody of a contractor who has served
   out his imprisonment sentence may pay at any time to the
   contractor the amount unearned by him and the reasonable
   value of all clothing furnished him, the section authorizing a
   prior release on payment of the amount not worked out, with the
   value of clothing furnished, is a mere matter of grace in the na-
   ture of a conditional pardon, which the convict is not required
   to accept, and hence the section is not unconstitutional as au-
   thorizing imprisonment for debt.

From the chancery court of Tunica county.

Hon. Percy Bell, Chancellor.

Dig, the appellant, applied to the chancellor for a writ of
*habeas corpus;* the writ was, upon a hearing on the merits,
denied, and the relator remanded to custody, from which judg-
ment he appealed to the supreme court.    The facts are stated
in the opinion of the court.

*J. T. Lowe,* for appellant.

Our supreme court, in *Ex parte William Meyer,* 57 Miss., 85, in an opinion delivered by Judge Chalmers, forever set at rest any contention as to what kind of debts come within the class provided in sec. 30 of the state constitution. Mark the language of the court:

. "We think the debts which the framers of the constitution had in view were those springing from the contracts of the party, express or implied, or the liabilities which the law imposes upon him for his tortious acts to another, and are wholly disconnected from the penalties incurred by violation of the criminal law."

There has been no contention or dispute at any time that the fifteen dollars for clothing is not a debt based on an implied contract, nor does the fact that there is a statute such as sec. 22, ch. 76, of the acts of 1894, which provides for imprisonment for debt, alter the situation in any sense.

The court in *Ex parte Meyer, supra,* held that a party could not be imprisoned in default of paying costs incurred by him in the trial of a criminal prosecution against himself, because same was inhibited by the constitutional provision. See sec. 11 *supra.* And we contend it would be idle to insist that by a legislative enactment a party could be held and imprisoned in default of paying costs incurred by him, the defendant, in the trial. And much more we contend is the proposition now before the court—to wit, the fifteen dollars for clothing furnished—a debt pure and simple, than any costs incurred by a defendant in the trial of a charge against him.

*William Williams,* attorney-general, *contra.*

Truly, J., delivered the opinion of the court.

Upon an application for *habeas corpus,* relator was remanded to custody by the chancellor. The agreed statement of facts

shows that relator was tried and convicted before a court of competent jurisdiction upon a charge of assault, and was sentenced to imprisonment in the county jail for a term of ninety days, and, in addition thereto, to pay a fine of fifty dollars, and costs of the prosecution, amounting to sixteen dollars and forty cents; that in default thereof relator was committed to jail under a duly issued mittimus, and the mittimus and jail fees amounted to two dollars; that, upon failure to pay fine and costs, relator was delivered to the county convict contractor; that said relator had served his ninety-day term of imprisonment, and had worked out a portion of the said fine and costs, until on the 25th of April there remained of this fine and costs not then worked out forty-two dollars and twenty cents, which the relator on that day paid to, and which was accepted by, the sheriff of the county, and an order issued by him directing the county convict contractor to release the said William Dig. The sheriff paid the said contractor the said sum of forty-two dollars and twenty cents, and handed him the order demanding him to release the relator. At that date the said contractor had already furnished the said convict, since the date of his delivery to him, and while the said convict was in his charge, clothing, shoes, etc., to the amount of fifteen dollars, and, because the said amount of fifteen dollars was not paid by the said relator at the time the said forty-two dollars and twenty cents was paid, the county convict contractor refused and failed to release from his custody and to discharge the said relator, and held the said Dig in his custody as a convict, over his protest and remonstrance. It being also agreed that the said amount so furnished in clothing was reasonable and necessary.

It is contended by the relator that the sum due for the clothing which was furnished by the convict contractor to the convict while in his custody constitutes simply a personal obligation from the one man to the other; that it is but a debt due by Dig personally to Williams, the convict contractor, as an individual. So, being a debt, the detaining of the relator in custody to en-

force the payment thereof is, in effect, imprisonment for debt, and therefore in contravention of sec. 30 of our constitution, which provides that "there shall be no imprisonment for debt." To be a debt within the meaning of the constitution, the obligation existing between the parties must be either purely contractual or arise from some legal liability growing out of the debtor's dealings with another. The term "debt," as employed in a constitutional provision prohibiting the imprisonment therefor, does not extend to or embrace any pecuniary obligation imposed by the state as a punishment for crime, whether the money, the payment of which is demanded, be for fines or costs, or even, in certain *quasi* criminal proceedings, other penalties of a moneyed nature which may be lawfully inflicted by a court. This is the recognized interpretation given to similar provisions not only in this state, but elsewhere. 16 Am. & Eng. Ency. Law, 34; *Ex parte Meyer,* 57 Miss., 85; *Ex parte Bridgforth,* 77 Miss., 418 (27 South. Rep., 622; 78 Am. St. Rep., 532). It is universally recognized that the prohibition against imprisonment for debt was devised solely for the protection of unfortunate and indigent debtors, who by financial misfortune might be placed at the mercy of a harsh and rigorous creditor. Hence the provision is restricted in its application to those moneyed obligations which grow out of a course of mutual dealings between the parties, or which arise by operation of commercial law or from civil liability imposed by law for some trespass or wrongful act towards another, and has never been construed as extending to criminal prosecutions or to penalties inflicted for violations of the criminal laws. As to such matters, the legislature is vested with complete authority to fix such punishments, not being cruel or inhuman, or fines, not being so excessive as to violate the constitutional provision, as in its judgment may best conserve the public welfare and preserve the public peace. These observations are general, and apply to all penalties and fines imposed as punishments for any transgression of the law. Such penalties are in no true sense debts

due the state or any inferior or subordinate agency or *quasi* public officer which it may empower to impose or enforce the collection of.

Turning to the concrete case, we find that the legislature in dealing with those convicted of misdemeanors, and in devising, as it was vested with plenary power to do, a plan for their proper and adequate punishment, and at the same time enforce the collection of fines and costs, by ch. 76, p. 67, Acts 1894, and the amendments thereto, adopted the following: "If a convict be sentenced to imprisonment in the county jail and the payment of a fine, he shall remain committed after the expiration of the term of imprisonment until the fine, costs, and jail fees, if any, be paid, unless discharged by due course of law." In every case, if the fine, costs, and jail fees, if any, be not promptly paid, "the convict shall remain in custody until he shall work out the amount thereof in one of the modes herein provided." The prescribed methods of working out sentences are three, but in the instant case it is only necessary to consider that method which arises when the convict is delivered to the county convict contractor. The county convict contractor is required to take and receive all convicts (except the infirm) who may be "sentenced to imprisonment in the county jail or to such imprisonment and the payment of a fine, or held for fine, costs, or jail fees during the time of his contract," and "to treat the convicts humanely and to provide each convict with sufficient wholesome food, the proper clothing, bedding, and fuel, and with medicine and medical attention when sick." When a convict is sentenced and the amount of fine and costs becomes known, the law gives him the privilege of paying in money the amount of such penalties. He can discharge and satisfy this portion of the judgment of the court, imposed upon him as a punishment for his crime, in this way immediately upon sentence, and before delivery to the contractor, if he so desires. If, however, he fails to avail himself of this opportunity, and the fine, costs, and jail fees "be not promptly paid,"

as an additional penalty imposed by warrant of law, he forfeits the right to take advantage of this method of securing his release, and is then only entitled to his discharge when he shall have worked out the amount of such fine, costs, and jail fees in one of the lawful modes prescribed. The legislature, if it chose, could make this rule absolute, and could, if in its wisdom it should seem wise or best, provide that any convict failing to promptly pay upon conviction all the penalties fixed by the judge should thereafter only procure his release by laboring for whatever period and under whatever humane provisions the law might fix. But no such harsh rule has been adopted by the legislature of our state. The statute here under review provides that even after the convict has forfeited his right to procure his release by paying in cash the fine imposed and the costs incurred, and has become, by reason of his default, subject to the other penalty of being required to pay the same by labor instead of in money, by sec. 22 of ch. 76, p. 72, Acts 1894, it is provided that a convict in the custody of a contractor, who has served out his imprisonment sentence, may pay out and secure his liberty at any time by paying to the contractor or into the county treasury the amount "unearned by him and the reasonable value of all clothing furnished to him, the amount to be ascertained and determined by the sheriff in case of disagreement." When a convict has been sentenced to pay a fine and costs and has failed to promptly pay, but has been delivered to the county contractor to work out the same at the wages established by the contract, he is given a "written memorandum of the date on which he is to be discharged," and beyond which he cannot lawfully be detained. By operation of law, he is sentenced to labor until that day, and has no right to expect to procure his freedom on any earlier date except upon compliance with the condition prescribed by the law. And this condition is not harsh or unreasonable. The legislature, recognizing the liability of all persons to become sick or disabled by disease, imposes upon the county convict contractor the burden of fur-

nishing medicines and medical attention. Not only is this required, but the law is mandatory that the convict shall be furnished with fuel and bedding and sufficient wholesome food, and, further, the "proper clothing" needed during the term of his confinement. If the convict labors until the day mentioned in his warrant of detention, he is entitled to his discharge, regardless of any expenditure which may have been made by the contractor for any of the articles or items mentioned. This is his right, guaranteed by the law to him; this is the penalty imposed upon him by the law for his failure to promptly pay the fine, costs, and jail fees upon conviction and before delivery to the contractor. If the convict desires to procure his freedom on a day earlier than that stated in his warrant of detention, he can only do so by complying with the provisions and satisfying the conditions set out in the law granting him the privilege. The law says: "As a punishment to fit your crime, you must labor until the date named in your warrant of detention; if you would be released sooner, you must pay, in addition to what remains unearned of your fine, costs, and jail fees, 'the reasonable value of all clothing' furnished you." There is no requirement that the convict shall pay for the clothing whether he will or not; there is simply a provision that the convict may pay for the clothing if he will, and thereby secure his freedom at an earlier date. It is in the nature of a conditional pardon, of which the convict may or may not avail himself; an offer of grace made the convict, which he may accept or reject. If he accepts, he must comply with the condition; if he rejects, no additional penalty is imposed—he is still discharged and released at the time originally fixed by law.

From this view of the matter, it is not necessary for us to decide whether the legislature would have the authority to impose, as an absolute penalty upon convicts, the payment of clothing furnished them while in custody after conviction. It has not attempted to do so, and we therefore intimate no opinion upon that point. It is sufficient to say that in the instant case

the relator is not required to pay for the clothing, as a pre-requisite to his discharge upon the date named in his memorandum of detention, which under the law should have been furnished him when he was delivered into the custody of the county convict contractor. If he desires his release sooner, he must pay the amount expended for clothing, which is admitted by this record to have been necessarily furnished, and as to the value of which there is no dispute.

*The conclusion of the chancellor was correct, and the judgment is affirmed.*