ON PETITION FOR WRIT OF PROHIBITION

WALLER, Justice,
for the Court:

STATEMENT OF THE CASE

¶ 1. John R. Nichols was held in contempt and ordered incarcerated by the Sunflower County Chancery Court for failure to make court-ordered payments pursuant to an agreed judgment. Nichols filed a petition for extraordinary relief with this Court seeking to have the chancery court’s order vacated, arguing that the order violates Article 3, § 30 of the Mississippi Constitution of 1890, which prohibits imprisonment for debts. After consideration of Nichols’ request and the pleadings filed by the respondents, we conclude that the order violates Article 3, § 30 of the Mississippi Constitution of 1890. Therefore, we grant the petition and the writ and vacate the chancery court’s contempt order.

FACTS

¶ 2. Clyde and Elsie Rutledge were the sole owners of RCR, Inc., a small closely held farming corporation. John R. Nichols and his wife Robbie (the Rutledges’ daughter) entered into an agreement with the Rutledges wherein they would transfer half their interest in the corporation to the Nichols. The Rutledges conveyed title to approximately twenty-five acres to the corporation in order for the corporation to develop a subdivision on the property. Only eleven of the lots were sold, and apparently no houses were ever built on the property. The Nichols subsequently defaulted on a note to the Bank of Commerce which was secured by the property, and Robbie Nichols’ two sisters, Kay R. Causey and Clydean R. Thomason, purchased the promissory note from the bank in order to avoid foreclosure.
¶ 3. The Rutledges thereafter filed suit against the Nichols seeking an accounting and the re-conveyance of the property back to them. On the day of trial a settlement was reached, and the agreement was *70 read into the record. The agreed judgment required the Nichols to: (1) re-convey certain property back to the Rutledg-es; (2) make an initial lump sum payment of $11,281.30 on or before February 8, 1999; and (3) pay the remaining balance of the note in thirty-six monthly installments in the amount of $1,235.23 beginning March 1, 1999, to Causey and Thomason because they had purchased the promissory note from the bank. The judgment also specifically acknowledged that the chancery court would retain jurisdiction over the matter for purposes of enforcing the judgment.
¶ 4. After failing to receive the required payments for February and March, the Rutledges filed a motion for citation of contempt against the Nichols. The Nichols moved to dismiss the motion for citation of contempt because it violated Article 3, § 30 the Mississippi Constitution of 1890, which prohibits imprisonment for debt. The chancery court denied the motion to dismiss and found the Nichols to be in willful contempt of its order. The trial court gave the Nichols five days in which to pay the delinquent sums due under the judgment in order to purge themselves of contempt. The trial court further ordered that if the delinquent sums were not paid on or before March 30, 1999, John Nichols[1] would be “incarcerated under such terms and conditions as the Court shall then determine.... ”
¶ 5. On March 25, 1999, John Nichols sought extraordinary relief in this Court in the form of a petition for writ of prohibition in which he asked this Court to vacate the chancery court order finding him in contempt and ordering him to be incarcerated. Nichols alleged that to incarcerate him would amount to imprisonment for a money debt in violation of Article 3, § 30 the Mississippi Constitution of 1890. A response to the petition was filed on April 8, 1999. This Court stayed enforcement of the order pending a decision on this matter. Pursuant to a motion filed by the Rutledges, we subsequently modified the stay to allow for collection of the judgment by any lawful means other than incarceration of Nichols.

DISCUSSION

A. Constitutional Prohibition
¶ 6. Article 3, § 30 the Mississippi Constitution of 1890 provides “[tjhere shall be no imprisonment for debt.” “To be a debt within the meaning of the Constitution, the obligation existing between the parties must be either purely contractual or arise from some legal liability growing out of the debtor’s dealings with another.” Ex parte Diggs, 86 Miss. 597, 600, 38 So. 730 (1905).
B. Exceptions to the Constitutional Prohibition
¶ 7. There are, however, exceptions to this prohibition. In Fanchier v. Gammill, 155 Miss. 316, 124 So. 365 (1929), the Court found support paid by a husband to his wife was an exception to the constitutional prohibition based on public policy:[2]
The obligation of the husband to support his wife is not a contractual one, that is, it is not founded exclusively in contract, but is founded, as stated in the former opinion, partially upon public policy. It is a public duty established by law, and is not a debt in the ordinary sense of that term, or in the sense of the Constitution prohibiting imprisonment for debt. It is an obligation which the defendant may be forced to perform by *71 contempt proceedings or by criminal statute.
155 Miss, at 322, 124 So. at 366. However, regarding such obligations, we have held that an individual must be given the opportunity to show he or she is without the present ability to discharge the obligation, and thereby avoid being held in contempt. Jones v. Hargrove, 516 So.2d 1354 (Miss.1987). Finally, This Court has also found that the prohibition against imprisonment for a debt found in Article 3, § 30, of the Mississippi Constitution of 1890 does not extend to a pecuniary obligation imposed by the state as a punishment for crime. See Payne v. State, 462 So.2d 902 (Miss.1984); Ex parte Diggs, 86 Miss. 597, 38 So. 730 (1905).
C. Civil or Criminal Contempt
¶ 8. We must determine whether the chancellor held Nichols in civil or criminal contempt. This Court distinguished between the two in Hinds County Bd. of Supervisors v. Common Cause, 551 So.2d 107 (Miss.1989), where we stated:
A civil contempt penalty is coercive, while a criminal contempt penalty is punishment.
The landmark case which distinguishes civil and criminal contempt is Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911), which states the following:
Contempts are neither wholly civil nor altogether criminal. And “it may not always be easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both.” Bessette v. Conkey, 194 U.S. [324], [24 S.Ct. 665, 667, 48 L.Ed. 997 (1904) ]. It is not the fact of punishment but rather its character and purpose that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court.... • [IJmpris-onment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court’s order.
* * *
On the other hand, if the defendant does that which has been commanded not to do, the disobedience is a thing accomplished. Imprisonment cannot undo or remedy what has been done nor afford any compensation for the pecuniary injury caused by the disobedience. If the sentence is limited to imprisonment for a definite period, the defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense. Such imprisonment operates, not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience.
221 U.S. at 441, 443[,] 31 S.Ct. at 498, 55 L.Ed. at 806.
Hinds County Bd. of Supervisors, 551 So.2d at 120-21 (emphasis added).
¶ 9. In this case, it appears that the chancellor held Nichols in civil contempt. This is not a case where the court is punishing the individual for conduct committed in the presence of the court as in Varvaris v. State, 512 So.2d 886 (Miss.1987), where the defendant was incarcerated for threatening an assistant district attorney in the courtroom. Nor is this a case of constructive or indirect contempt that this Court was faced with in Terry v. State, 718 So.2d 1097 (Miss.1998), where the defendants were incarcerated for dis *72 seminating information regarding a pending criminal trial in the local newspaper. Rather the chancellor’s order allowed for Nichols to avoid incarceration by bringing the payments on the judgment current, which provision is characteristic of civil contempt.
D. Application of the Constitutional Prohibition to Nichols
¶ 10. We now turn to the validity of the order holding Nichols in contempt. Nichols argues that the judgment is not one for alimony, child support or the result of a criminal proceeding against him; therefore, the chancery court does not have the authority to order him to be imprisoned for failure to make the payments as required under the judgment. The Rutledges argue that the agreed judgment was the result of a fully negotiated agreed settlement; therefore it is not the ordinary type of money judgment contemplated by Article 3, § 30 of the Mississippi Constitution of 1890.
¶ 11. We find the Rutledges’ argument to be unpersuasive. It has not been shown that the debt at issue is anything but an ordinary civil debt in the form of an agreed judgment. While the debt may be anything but ordinary to the Rutledges, or to the Nichols for that matter, it is not the sort of debt which implicates the public policy of this state and does not fall into any of the exceptions stated above. We therefore find that to imprison Nichols for the non-payment of this judgment would violate Article 3, § 30 of the Mississippi Constitution of 1890. Seeking an extraordinary writ pursuant to M.R.A.P. 21was an appropriate remedy in this case, see Ex parte Burchinal, 571 So.2d 281 (Miss.1990) (trial court order holding petitioner in contempt vacated pursuant to a petition for interlocutory appeal treated as a petition for extraordinary relief), and accordingly we vacate the order of the chancery court finding Nichols in contempt and ordering him incarcerated. The Rutledges are free to collect the judgment by execution, garnishment or any other available lawful means so long as it does not include imprisonment.
¶ 12. PETITION FOR WRIT OF PROHIBITION GRANTED; ORDER OF CONTEMPT VACATED.
PRATHER, C.J., PITTMAN, P.J., BANKS AND McRAE, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE OPINION JOINED BY SULLIVAN, P.J., MILLS AND COBB, JJ.

. We find it interesting that John Nichols was ordered to be incarcerated, but his wife Robbie was not, even though the chancellor found them both to be in contempt.

. However, regarding such obligations, we have held that an individual must be given the opportunity to show he or she is without the present ability to discharge the obligation, and thereby avoid being held in contempt. Jones v. Hargrove, 516 So.2d 1354, 1357 (Miss.1987).