57 So.3d 626 (2011)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Houston J. PATTON.
No. 2010-JP-01387-SCT.
Supreme Court of Mississippi.
March 31, 2011.
*628 Darlene D. Ballard, attorney for appellant.
Sorie S. Tarawally, Jackson, attorney for appellee.
EN BANC.
LAMAR, Justice, for the Court:
¶ 1. The Mississippi Commission on Judicial Performance recommended that Houston J. Patton, County Court Judge for Hinds County, be publicly reprimanded and ordered to pay a fine of $1,000 and costs of $100 for engaging in ex parte communications, misusing his contempt power, failing to properly notice hearings, granting relief not requested, and issuing a search warrant without legal authority, all actions which the Commission found to constitute willful misconduct in office. Judge Patton joined the Commission's recommendations and has admitted to all charges of misconduct. After reviewing the record, we find the recommended sanctions to be insufficient, and we decline to adopt the Commission's recommendations. We impose a sanction of suspension without pay for thirty days, a public reprimand, a fine of $1,000, and costs of $100.

STATEMENT OF FACTS AND PROCEEDINGS
¶ 2. On February 19, 2009, the Commission filed a formal complaint, in which it alleged that Judge Patton had engaged in improper conduct in two cases involving the same defendant. In the first case,[1] the Commission averred that Judge Patton had engaged in ex parte communications with the plaintiffs and counsel for the defendant; had presided over numerous hearings and entered orders without proper notice to the defendant; had wrongfully held the defendant in contempt, which resulted in his incarceration; and had wrongfully issued a search warrant for the defendant's premises in violation of his due-process rights. And in the second case,[2] the Commission averred that Judge Patton had engaged in ex parte communications with the plaintiff and counsel for the defendant; had granted relief not prayed for by the plaintiffs; and had *629 wrongfully held the defendant in contempt, resulting in his incarceration. The Commission found that Judge Patton's conduct in both cases had violated Canons 1, 2A, 2B, 3B(2), 3B(7), 3B(8), and 3B(9) of the Code of Judicial Conduct. The Commission further found that Judge Patton's actions constituted "... (b) willful misconduct in office; [and] (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute[.]"[3]
¶ 3. On May 19, 2010, the Commission filed a second formal complaint against Judge Patton. The Commission averred that Judge Patton again unlawfully had held a party in contempt, resulting in incarceration.[4] The Commission found that Judge Patton's conduct had violated Canons 1, 2A, 2B, 3B(2), 3B(7), 3B(8), and 3C(1) of the Code of Judicial Conduct and Article 3, Section 30 of the Mississippi Constitution,[5] which prohibits imprisonment for debt. The Commission found the conduct was sanctionable under Section 177A of the Mississippi Constitution, as it was "... (b) willful misconduct in office; [and] (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute."[6] The Commission, through its attorney, and Judge Patton entered into an Agreed Statement of Facts and Proposed Recommendation in lieu of a hearing. This agreed statement essentially reiterated the facts set forth in the formal complaints. Judge Patton and the Commission agreed that he had violated Article 3, Section 30 of the Mississippi Constitution and Canons 1, 2A, 2B, 3B(2), 3B(7), 3B(8), 3B(9), 3C(1), and that his conduct was willful and prejudicial to the administration of justice under Section 177A of the Mississippi Constitution. They agreed that the appropriate sanctions should be a public reprimand, a $1,000 fine, and $100 in costs. The full Commission accepted and adopted the Agreed Statement of Facts and Proposed Recommendation with one change; it was silent as to a violation of Article 3, Section 30, of the Mississippi Constitution.

DISCUSSION
¶ 4. This Court conducts a "`de novo review of judicial misconduct proceedings, giving great deference to the findings, based on clear and convincing evidence, of the recommendations of the Mississippi Commission on Judicial Performance.'"[7] We may "accept, reject, or modify, in whole or in part, the findings and recommendation of the Commission."[8] This Court must render an independent judgment, as we are vested with the "sole power to impose sanctions in judicial misconduct cases."[9]
¶ 5. The Commission found by clear and convincing evidence that Judge Patton's conduct was willful and prejudicial to the administration of justice under Section 177A of the Mississippi Constitution, and that it violated Canons 1, 2A, 2B, 3B(2), 3B(7), 3B(8), 3B(9),[10] and 3C(1). To *630 be willful under Section 177A, the misconduct must be "done willfully or with gross unconcern and generally in bad faith[.]"[11] And "conduct prejudicial to the administration of justice that brings the judicial office into disrepute" includes all willful conduct.[12] This Court has held that a judge's participation in ex parte communication[13] and misuse of contempt power[14] constitute willful misconduct and conduct prejudicial to the administration of justice. Further, Judge Patton agrees that his conduct falls within Section 177A(b) and (e), violates the above-noted code sections, and is sanctionable. We also find that Judge Patton's action of imprisoning a litigant for failure to pay a civil judgment is a violation of Article 3, Section 30 of the Mississippi Constitution.[15] Therefore, we find that Judge Patton should be sanctioned.
¶ 6. Under Section 177A, this Court may "remove from office, suspend, fine or publicly censure or reprimand" a judge for misconduct.[16] This Court considers six factors to determine an appropriate sanction:
(1) The length and character of the judge's public service; (2) Whether there is any prior case law [sic] on point; (3) The magnitude of the offense and the harm suffered; (4) Whether the misconduct is an isolated incident or evidences a pattern of conduct; (5) Whether moral turpitude was involved; and (6) The presence or absence of mitigating or aggravating circumstances.[17]
And we have ruled that the "guiding factor in assigning an appropriate sanction is that if it fits the offense, and this is best measured by comparison with sanctions handed down in prior cases for the listed offense."[18]

1. The length and character of the judge's public service
¶ 7. Judge Patton has been a judge for more than twenty years, and has no prior disciplinary record. The record contains no information about the character of Judge Patton's public service.

2. Whether there is any prior caselaw on point.
¶ 8. This Court has considered numerous judicial-misconduct cases involving abuse of contempt power and ex parte communications.[19]*631 Recently, this Court decided Mississippi Judicial Performance v. Vess, in which this Court sanctioned a justice court judge with a public reprimand, a fine of $2,000, and costs of $100, for engaging in ex parte communications with both parties in a pending suit and for failing to provide notice to one of the parties.[20] In that case, the judge admitted his recent misconduct and agreed to the imposed sanction, but he also had been disciplined on two other occasions.[21]
¶ 9. And in Mississippi Commission on Judicial Performance v. Byers, this Court sanctioned a circuit judge with a public reprimand, fine of $1,500, and costs of $2,023.59 for various improprieties, including the "serious charge" of misusing the contempt power.[22] In that case, a reporter disobeyed a court order by publishing an article about a juvenile proceeding.[23] The circuit judge had the reporter arrested and incarcerated without filing an affidavit or an order to show cause, without noticing the hearing, and without an appeal bond.[24] In addition to misusing the contempt power, the Court found that the judge had improperly sentenced a defendant under the wrong statute and had improperly extended a defendant's probation.[25] The Court reviewed the misconduct at issue and a previous private reprimand for abuse of judicial powers before imposing sanctions.[26] But the Court noted it "seriously considered the sanction of removal."[27]
¶ 10. The Court also considered a judge's misuse of contempt in Mississippi Commission on Judicial Performance v. Gunter, in which a municipal judge had a seventeen-year-old arrested for contempt and immediately brought before him for failing to appear for community service.[28] The judge also improperly ordered that the teenager's mother be arrested for contempt of court and held for several hours without bond.[29] In addition to finding the judge had misused his power of contempt, this Court also found that the judge had abused his official capacity as a judge by using the National Crime Information Center and contacting clerks and police officers regarding a case in which he was counsel.[30] The Court noted that this was *632 the judge's first infraction when it imposed a sanction of a public reprimand, a $1,500 fine, and $100 in costs.[31]
¶ 11. But this Court has imposed harsher sanctions in cases involving similar misconduct. In Mississippi Commission on Judicial Performance v. Gordon, the Mississippi Commission on Judicial Performance recommended a public reprimand and assessment of costs for a municipal court judge who engaged in ex parte communications with defendants and subsequently fixed fourteen traffic tickets.[32] This Court enhanced the punishment to a thirty-day suspension without pay, a public reprimand, and court costs, even though the judge had no formal disciplinary record.[33]
¶ 12. Likewise, in Mississippi Commission on Judicial Performance v. Britton, the Court again imposed an enhanced punishment of suspension without pay for thirty days, a public reprimand, and costs, on a justice court judge when the Commission had recommended only a public reprimand and costs of $1,118.37.[34] In that case, the judge had engaged in improper ex parte communications and without notice or hearing, had entered orders and had undertaken other actions in two unrelated cases.[35] The judge also had engaged in similar misconduct and had been before the Commission a total of six times, but he had never been admonished by this Court.[36]
¶ 13. And in Mississippi Commission on Judicial Performance v. Lewis, this Court accepted the Commission's recommendation to remove a justice court judge from office and assess costs of $2,080.23.[37] In that case, the judge had engaged in ex parte communications in two separate cases and improperly had dismissed a default judgment.[38] This Court also found that the judge had engaged in improper sexual advances toward the litigants, and that he had failed to pay previous court costs and submit to a public reprimand for prior disciplinary proceedings.[39]

3. The magnitude of the offense and the harm suffered
¶ 14. In this case, Judge Patton failed to follow the law regarding ex parte communications, contempt, and execution of search warrants. He failed to ensure litigants received notice of hearings, and he publicly commented on pending cases. This Court has ruled that "immeasurable harm occurs when a judge who is trusted as the gatekeeper to justice for all our citizens, fails to learn and apply fundamental tenets of the law."[40] And we also have ruled that "the power to hold a person in contempt of court is a solemn responsibility, and any misuse of this power is a serious charge."[41] Judge Patton's conduct gave the appearance of impropriety and of lending the prestige of his office to advance the private interests of others. Further, *633 his actions have violated the due-process rights of litigants. We find that Judge Patton's conduct brings the integrity, independence, and quality of the judiciary in question.

4. Whether the misconduct is an isolated incident or evinces a pattern of conduct.
¶ 15. While this is Judge Patton's first time to be sanctioned for misconduct, this action was initiated by two formal complaints involving misconduct in three civil cases. In each case, Judge Patton engaged in ex parte communication. In two cases, he improperly used his contempt power, held hearings without notice, and wrongfully incarcerated defendants. We have held that three incidents within one formal complaint constituted a pattern.[42] Similarly, we found ten violations of various misconduct to constitute a pattern where the judge had no prior disciplinary history and all allegations were brought within one formal complaint.[43] So, contrary to the dissent, this Court has found a pattern of misconduct when there is no prior disciplinary action. Therefore, we find a pattern of misconduct.

5. Whether moral turpitude was involved.
¶ 16. This Court has ruled that moral turpitude "includes, but is not limited to, actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute."[44] We also have said that a finding of moral turpitude "must involve some immorality"[45] and cross the line "from simple negligence or mistake, to willful conduct which takes advantage of a judge's position for greed or other inappropriate motives."[46] Our discussion of this Gibson factor in Mississippi Commission on Judicial Performance v. Sanford, in which we found moral turpitude, is particularly relevant:
[T]his case is not about a judge's conduct because of a judge's lack of judicial education or training. This case involves some of the basic tenets of daily living in a civil society, such as living by standards of fundamental decency and honesty by not abusing the judicial process, and by revering the law and the judicial system, and upholding the dignity and respect of the judiciary through appropriate conduct and behavior toward others.[47]
We find that Judge Patton's conduct, which is undisputed, involves moral turpitude, as he abused the judicial process and failed to revere the law and judicial system. His actions of wrongfully incarcerating litigants, engaging in ex parte communications, failing to give notice of hearings and orders, publicly commenting on a pending case, and improperly issuing a search warrant in a civil case, certainly warrant this Court to find moral turpitude.

*634 6. The presence or absence of mitigating or aggravating circumstances

¶ 17. This is Judge Patton's first time to be sanctioned. He has admitted his misconduct and has agreed to the recommended sanctions. However, his behavior was very similar in three different cases and shows a pattern of misconduct. Judge Patton has ignored the Code of Judicial Conduct, and his actions have deprived litigants of the due process of law, the gravity of which this Court takes very seriously. This Court gives great deference to the Commission's findings with the clear charge that we must render an independent judgment.
¶ 18. While this is Judge Patton's first disciplinary action, we find his conduct is egregious enough to warrant suspension, as imposed in Gordon and Britton, in addition to the recommended sanction. After full consideration and de novo review of the record before us, we find that the Commission's recommendation is too lenient, and we enhance the sanction to include a thirty-day suspension without pay, in addition to a public reprimand, fine of $1,000, and costs of $100.

CONCLUSION
¶ 19. Judge Patton has violated Canons 1, 2A, 2B, 3B(2), 3B(7), 3B(8), 3B(9), 3C(1) of the Code of Judicial Conduct, and his conduct violated Article 3, Section 30 of the Mississippi Constitution and is within the scope of Section 177A, subparts (b) and (e). Because of his misconduct, we impose a sanction of a suspension without pay for thirty days, a public reprimand, a fine of $1,000, and costs of $100. The public reprimand shall be read in open court on the first day of the next term of the Circuit Court of Hinds County in which a jury venire is present, with Judge Patton in attendance.
¶ 20. JUDGE HOUSTON J. PATTON, COUNTY COURT JUDGE FOR HINDS COUNTY, SHALL BE PUBLICLY REPRIMANDED IN OPEN COURT BY THE PRESIDING JUDGE OF THE HINDS COUNTY CIRCUIT COURT ON THE FIRST DAY OF THE NEXT TERM OF THAT COURT AFTER THIS DECISION BECOMES FINAL WHEN A VENIRE PANEL IS PRESENT, IS SUSPENDED FROM OFFICE WITHOUT PAY FOR THIRTY(30) DAYS, AND IS ASSESSED A FINE IN THE AMOUNT OF $1,000 AND COSTS OF $100.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., AND RANDOLPH, J., CONCUR. KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER AND PIERCE, JJ. PIERCE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND CHANDLER, JJ. KING, J., NOT PARTICIPATING.
KITCHENS, Justice, concurring in part and dissenting in part:
¶ 21. I must respectfully dissent from the portion of today's opinion that adds a thirty-day suspension to the sanctions recommended by the Commission. Judge Patton agreed to the Commission's recommendation, and the recommended sanctions are consistent with our prior rulings in similar cases. This Court, in my judgment, should accept that recommendation rather than imposing heightened sanctions that are unwarranted by the facts. I specifically take issue with the majority's finding that Judge Patton's conduct evinces a pattern of bad behavior and that his conduct involved moral turpitude.
*635 ¶ 22. While this Court has the ultimate authority over the imposition of sanctions, it is well settled that sanctions in any disciplinary action should be consistent with previous, similar cases. Miss. Comm'n on Judicial Performance v. Sanford, 941 So.2d 209, 215 (Miss.2006) (citing In re Bailey, 541 So.2d 1036, 1039 (Miss. 1989)). The majority's decision to impose heightened sanctions on a finding of moral turpitude is not warranted by the facts and is in conflict with prior cases involving similar conduct. In addition, the majority is not justified in finding, contrary to the Commission's conclusions, that the acts in this case show a pattern of misconduct; this is the first occasion upon which Judge Patton has been sanctioned by this Court in the course of a career on the bench that is in its third decade.
¶ 23. The determination of sanctions for judicial misconduct and the appropriateness of a sanction are based on a finding of these well-known factors: (1) the length and character of the judge's public service; (2) whether there is prior case law on point; (3) the magnitude of the offense and the harm suffered; (4) whether the misconduct is an isolated incident or evidences a pattern of conduct; (5) whether moral turpitude was involved; and (6) the presence or absence of mitigating or aggravating circumstances. Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004).
¶ 24. Moral turpitude is a notoriously undefined term of art, and our decisions do not shed much light on its meaning. For the purposes of judicial discipline, it "includes, but is not limited to, actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute." Sanford, 941 So.2d at 217 (Miss. 2006) (quoting Gibson, 883 So.2d at 1158). In the context of criminal and tort law, this Court has said that moral turpitude "has been defined as inherent baseness or vileness of principle in the human heart. It means, in general, shameful wickedness, so extreme a departure from ordinary standards of honesty, good morals, justice or ethics as to be shocking to the moral sense of the community." Speed v. Scott, 787 So.2d 626, 633 (Miss.2001) (quoting Restatement (Second) Torts § 571, cmt. g (1977)). In the context of attorney discipline, this Court has held, for instance, that the intentional conversion of client funds for one's own use constitutes attorney conduct involving moral turpitude. See, e.g., Miss. Bar v. Sweeney, 849 So.2d 884, 888 (Miss.2003); Miss. State Bar Ass'n v. Strickland, 492 So.2d 567, 571 (Miss.1986).
¶ 25. The United States Supreme Court, in the context of deportable offenses under immigration law, has refused to assign a fixed meaning to the term "moral turpitude," other than to hold that crimes involving an element of fraud implicate that term. Jordan v. De George, 341 U.S. 223, 232, 71 S.Ct. 703, 708, 95 L.Ed. 886 (1951). In reaching its decision that conspiracy to defraud the United States is a deportable offense involving moral turpitude, that Court stated "that fraud has consistently been regarded as such a contaminating component in any crime that American courts have, without exception, included such crimes within the scope of moral turpitude." Id. at 228, 71 S.Ct. 703. Of course, that analysis, while incorporating fraud, brings this Court no closer to an exhaustive definition. Indeed, Justice Jackson, in his dissent to that decision, condemned the use of the term in the law as insufficiently definite to pass constitutional muster. Id. at 232, 71 S.Ct. 703 (Jackson, J., dissenting). After noting that resort to a dictionary renders the meaning of the phrase as "morally immoral," *636 Justice Jackson argued that the term should have no application in law as an aggravating factor, writing:
We should not forget that criminality is one thinga matter of lawand that morality, ethics and religious teachings are another. Their relations have puzzled the best of men. Assassination, for example, whose criminality no one doubts, has been the subject of serious debate as to its morality. This does not make crime less criminal, but it shows on what treacherous grounds we tread when we undertake to translate ethical concepts into legal ones, case by case. We usually end up by condemning all that we personally disapprove and for no better reason than that we disapprove it. In fact, what better reason is there? Uniformity and equal protection of the law can come only from a statutory definition of fairly stable and confined bounds.
Id. at 241, 71 S.Ct. 703. We may take heed of Justice Jackson's admonition without completely rejecting the idea that some acts, within the context of circumstances, deserve moral condemnation. Whatever the definition of moral turpitude should be for our purposes, it should be clear that its application as an aggravating factor should occur only where the facts warrant our strongest condemnation. In addition, if fraud is a touchstone, it indicates that a finding of moral turpitude requires this Court to look beyond the sanctionable conduct itself and examine, as well, the intent underlying the behavior in question.
¶ 26. In line with that principle, this Court has said that a finding of moral turpitude requires a determination of "whether a judge's conduct crosses the line from simple negligence or mistake, to willful conduct which takes advantage of a judge's position for greed or other inappropriate motives." Miss. Comm'n on Judicial Performance v. Gordon, 955 So.2d 300, 305 (Miss.2007) (holding that fixing tickets by passing them to the inactive files without requiring the defendants to appear in court and over the objections of the issuing officer constituted moral turpitude). Thus, heightened sanctions may be appropriate when there is a finding that the conduct "willfully subverts justice." Id. Therefore, if the facts presented to us do not support a conclusion that the motives of the judge being sanctioned were inappropriate, we should refrain from finding that moral turpitude has been implicated.
¶ 27. The majority cites Mississippi Commission on Judicial Performance v. Lewis, 913 So.2d 266 (Miss.2005), for the proposition that sanctions beyond fines and public reprimands are appropriate where judicial misconduct involves improper ex parte communications and improper dismissals. The majority, in the present case, however, fails to recount the underlying facts that led it to a finding of moral turpitude in that case. In Lewis, 913 So.2d at 268, the judge had engaged in ex parte communications in order to make sexual advances toward several women. The improper dismissal cited by this Court was intended by him to aid the judge's sexual advances. Id. at 269. The improper ex parte communications were not confined to meetings with the complainants in chambers but also included telephone calls, sexual in content, made by the judge to at least one of the complainants at her home. Id. at 268. The judge had been sanctioned numerous times prior to the cited action and had failed to pay fines and costs imposed for those previous sanctions. Id. It was clear in that case that the improper conduct was not only prejudicial to the administration of justice, but also in furtherance of the judge's personal ends in conflict with his role as an officer of the *637 court. This Court specifically found that the judge's conduct made it impossible for him to present himself as an unbiased trier of fact. Id. at 271. Unlike today's case, the Lewis opinion extensively discussed the facts that supported a conclusion that the sanctionable conduct was not merely in violation of the Canons, but involved significant aggravating circumstances.
¶ 28. Here, this Court uses the inclusive definition of moral turpitude in a manner that is inconsistent with the fundamental premise underlying that factor: that some wrongful acts by judges, committed in furtherance of their private interests, are so repugnant to the basic standards of social expectations that we must condemn and punish them more harshly than we would condemn and punish other wrongful acts. Here, the majority does not hold that Judge Patton's conduct was in any way fraudulent, intended to further his own interests to the detriment of the judiciary, motivated by greed, or was otherwise so morally repugnant that society as a whole would find his conduct shocking. The majority simply states that, as his conduct interfered with the administration of justice, heightened sanctions are appropriate.
¶ 29. Our jurisprudence cries out for consistency on this point. Not every ex parte communication is the product of a base heart; not every improper dismissal is the product of the desire for personal gain at the expense of the impartial administration of justice. Judges are human, and therefore inherently imperfect; the Canons impose a standard of conduct that is not impossibly high, but also sanctions conduct that is the product of human flaws or frailty but is not necessarily wicked, deceitful, fraudulent or vile. We should take it as a limiting principle that even actions amounting to willful misconduct do not constitute wrongdoing that is the product of impurity or immorality unless the totality of the circumstances so indicates. Where, as here, there is no allegation and no proof that the judge subject to discipline acted in furtherance of his self-interests, with an intent to defraud, with inherent baseness or vileness of principle, with deceitin short, with shameful wickednessthis Court should not make a finding that moral turpitude is present.
¶ 30. I also take issue with the majority opinion's characterization of Judge Patton's conduct as a pattern of behavior. The Commission made no such finding, and the facts in the record do not support that conclusion. While I do not dispute that Judge Patton's conduct in these three cases violated the Canons, it does not necessarily follow that improper conduct in three cases over the course of a 20-plus-year career on the bench with no prior disciplinary actions constitutes a pattern. The majority cites Mississippi Commission on Judicial Performance v. Cowart, 936 So.2d 343, 350 (Miss.2006), and Mississippi Commission on Judicial Performance v. Bradford, 18 So.3d 251, 256 (Miss. 2009), for the proposition that three incidents within one formal complaint constitute a pattern. I note that, in Cowart, each of the three incidents alluded to by the majority involved substantially identical misconduct of improperly remanding traffic citations and then reinstating them on the active docket. Cowart, 936 So.2d at 345-46. If three incidents reported within one disciplinary action is the de minimis standard to be employed by this Court with respect to a finding of a pattern of conduct, then we should, at the very least, also make a finding that the conduct in question is so substantially similar, if not identical, that it warrants application of this factor when we refuse to adopt a recommendation of the Commission.
*638 ¶ 31. The majority also relies on Mississippi Commission on Judicial Performance v. Britton, 936 So.2d 898 (Miss.2006), and Gordon, 955 So.2d 300, as similar cases in which the Court was justified in imposing heightened sanctions for a first public infraction. As noted above, this Court in Gordon ruled a single disciplinary action involving fourteen separate acts of ticket fixing, despite the egregiousness of the conduct, did not constitute a pattern of conduct. Gordon, 955 So.2d at 305. And, in Britton, the judge had been before the Commission on six separate occasions over a six-year period, each time for infractions involving similar conduct. Britton, 936 So.2d at 907. In both Britton and Gordon, this Court made extensive findings of fact to support the conclusion that the conduct was sufficiently egregious, either by a finding of moral turpitude or of a pattern of conduct, to justify enhanced sanctions. Here, the Court does not support its ruling that aggravating circumstances, including its findings of moral turpitude and a pattern of conduct, are present. As such, suspension in this case is not appropriate.
¶ 32. For the above reasons, I respectfully concur in part and dissent in part.
CHANDLER AND PIERCE, JJ., JOIN THIS OPINION.
PIERCE, Justice, concurring in part and dissenting in part:
¶ 33. I concur in part and dissent in part in this case because I would accept the Commission's and Judge Patton's Agreed Statement of Facts and Proposed Recommendation. As the majority appropriately points out (Maj. Op. ¶ 7), "Judge Patton has been a judge for more than twenty years, and has no prior disciplinary record." Therefore, I would hold that a public reprimand, payment of $1,000 fine, and payment of costs of $100 is an appropriate sanction.
KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION.
NOTES
[1] John Woodward and Vivian Wajda v. Billy Ralph Sullivan, No. 07-1884.
[2] Joseph Gregory and Debra Gregory v. Billy R. Sullivan, Individually and Billy R. Sullivan d/b/a A & S Environmental, No. 251-07-000328-COV.
[3] Miss. Const. art. 6, § 177A(b),(e).
[4] Vernon and Constance Hughes v. Homer "H.L." Tillman and John Does 1-5, No. 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-COV.
[5] Miss. Const. art. 3, § 30.
[6] Miss. Const. art. 6, § 177A(b),(e).
[7] Miss. Comm'n on Judicial Performance v. Sanford, 941 So.2d 209, 212 (Miss.2006) (quoting Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155, 1156 (Miss. 2004)).
[8] Rules of the Miss. Comm'n on Judicial Performance 10(E).
[9] Gibson, 883 So.2d at 1157.
[10] We note that the record contains no facts that support a violation of Canon 3B(9), which generally prohibits a judge and his court personnel from publicly commenting on a pending case. Presumably facts in support of this violation were presented to the Commission, because Judge Patton and the Commission provided in the agreed statement of facts that Cannon 3B(9) was violated. Furthermore, the Commission filed a brief in support of its recommendation in which it stated: "During the time the cases involved in Inquiry Concerning a Judge No. 2008-274 were pending, Respondent made comments to the local newspaper in an attempt to explain his actions and justify Sullivan's incarceration. In addition, Respondent publicly admitted ex parte contact with one of the litigants." Judge Patton did not file a brief but joined the "petition filed by the Commission." We will consider these unrebutted (and agreed to) assertions under the applicable de-novo review.
[11] Miss. Comm'n on Judicial Performance v. U.U., 875 So.2d 1083, 1088-89 (Miss.2004).
[12] Miss. Comm'n on Judicial Performance v. Vess, 10 So.3d 486, 489 (Miss.2009).
[13] Id.
[14] Miss. Comm'n on Judicial Performance v. Walker, 565 So.2d 1117, 1124 (Miss.1990).
[15] See In re Nichols, 749 So.2d 68 (Miss. 1999).
[16] Miss. Const. art. 6, § 177A.
[17] Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004).
[18] Miss. Comm'n on Judicial Performance v. Britton, 936 So.2d 898, 906 (Miss.2006).
[19] See e.g., Vess, 10 So.3d at 488-89, 495 (ex parte communication and abuse of contempt); Britton, 936 So.2d at 906 (ex parte communication); Miss. Comm'n on Judicial Performance v. Lewis, 913 So.2d 266 (Miss.2005) (ex parte communication); Miss. Comm'n on Judicial Performance v. Blakeney, 848 So.2d 824 (Miss.2003) (ex parte communication); Miss. Comm'n on Judicial Performance v. Willard, 788 So.2d 736 (Miss.2001) (ex parte communication and abuse of contempt); Miss. Comm'n on Judicial Performance v. Gunter, 797 So.2d 988, 990 (Miss.2001) (abuse of contempt); Miss. Comm'n on Judicial Performance v. Lewis, 801 So.2d 704 (Miss.2001) (ex parte communication); Miss. Comm'n on Judicial Performance v. Byers, 757 So.2d 961, 973 (Miss.2000) (abuse of contempt); Miss. Comm'n on Judicial Performance v. Sanders, 749 So.2d 1062 (Miss.1999) (ex parte communication and abuse of contempt); Walker, 565 So.2d at 1124 (abuse of contempt).
[20] Miss. Comm'n on Judicial Performance v. Vess, 10 So.3d 486, 488-89, 495 (Miss.2009).
[21] Id. at 491, 492-93.
[22] Byers, 757 So.2d at 973.
[23] Id. at 970.
[24] Id. at 970-71.
[25] Id. at 967-69.
[26] Id. at 970, 973.
[27] Id. at 973.
[28] Miss. Comm'n on Judicial Performance v. Gunter, 797 So.2d 988, 990 (Miss.2001).
[29] Id.
[30] Id. at 989.
[31] Id. at 991-92.
[32] Miss. Comm'n on Judicial Performance v. Gordon, 955 So.2d 300, 301-02 (Miss.2007).
[33] Id. at 306.
[34] Miss. Comm'n on Judicial Performance v. Britton, 936 So.2d 898, 906 (Miss.2006).
[35] Id. at 902-03.
[36] Id. at 907.
[37] Miss. Comm'n on Judicial Performance v. Lewis, 913 So.2d 266, 268 (Miss.2005).
[38] Id. at 268-69.
[39] Id. at 271-72.
[40] Miss. Comm'n on Judicial Performance v. Britton, 936 So.2d 898, 906 (Miss.2006).
[41] Miss. Comm'n on Judicial Performance v. Byers, 757 So.2d 961, 973 (Miss.2000).
[42] Miss. Comm'n on Judicial Performance v. Cowart, 936 So.2d 343, 350 (Miss.2006).
[43] Miss. Comm'n on Judicial Performance v. Bradford, 18 So.3d 251, 256 (Miss.2009).
[44] Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004).
[45] Miss. Comm'n on Judicial Performance v. Roberts, 952 So.2d 934, 942 (Miss.2007).
[46] Miss. Comm'n on Judicial Performance v. Vess, 10 So.3d 486, 493 (Miss.2009) (quoting Miss. Comm'n on Judicial Performance v. Gordon, 955 So.2d 300, 305 (Miss.2007)).
[47] Miss. Comm'n on Judicial Performance v. Sanford, 941 So.2d 209, 217 (Miss.2006).